Devin A. McRae, SBN 223239
  *dmcrae@earlysullivan.com*
Rebecca L. Claudat, SBN 315736
  *rclaudat@earlysullivan.com*
EARLY SULLIVAN WRIGHT
  GIZER & McRAE LLP
6420 Wilshire Boulevard, 17th Floor
Los Angeles, California 90048
Telephone: (323) 301-4660
Facsimile: (323) 301-4676

Attorneys for Plaintiffs
ROB GRABOW and PARADISE VALLEY
PICTURES LLC

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROB GRABOW, an individual; PARADISE VALLEY PICTURES LLC, a Montana limited liability company, | Case No. |
| | **COMPLAINT FOR:** |
| Plaintiffs, | **(1) COPYRIGHT INFRINGEMENT;** |
| v. | **(2) BREACH OF CONTRACT;** |
| NETFLIX, INC., a Delaware corporation, LEBRON JAMES, an individual; SPRINGHILL ENTERTAINMENT LLC, a Delaware limited liability company; CHERNIN ENTERTAINMENT, LLC, a Delaware limited liability company; WISE ENTERTAINMENT, INC. a California corporation; LAKE ELLYN ENTERTAINMENT, INC., a California corporation; STERLIN HARJO, an individual; SYDNEY FREELAND, an individual; BRIT HENSEL, an individual; and DOES 1-20, inclusive, | **(3) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS;** |
| | **(4) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE** |
| | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

**COMPLAINT**

Plaintiffs Rob Grabow ("Grabow") and Paradise Valley Pictures LLC ("Paradise Valley," jointly, "Plaintiffs") allege as follows:

## INTRODUCTION

1.      *Rez Ball* is a film recently released on September 27, 2024, about a high school basketball team on a Native American reservation in pursuit of a state championship title. Defendants' *Rez Ball* copies Grabow's script *The Gift of the Game* in violation of Plaintiffs' registered copyrights. While producing *Rez Ball*, Defendants had, not only access (by several avenues) to, but actual possession of one or more copies of *The Gift of the Game* and participated in, or were privy to, in-depth conversations with Grabow concerning his script and the elements thereof that were copied by Defendants' *Rez Ball*. It's not that the two works share just the same general premise, which they do – *Rez Ball*, as a matter of fact, copied a striking and substantial amount of concrete expressive elements from Grabow's script, which he shared in confidence.

2.      By their infringement and wrongful conduct alleged herein, Defendants have achieved commercial success with *Rez Ball*, which has been met with a warm reception and critical acclaim, reaching heights of popularity on Netflix. Defendants, heavy Hollywood hitters, have knowingly ripped off Plaintiffs' copyrighted work for their own economic benefit at the expense of Plaintiffs and without regard to their creative rights.

## THE PARTIES

3.      Plaintiff Grabow is, and at all times herein mentioned was, an individual citizen of the United States. He resides in Gallatin County, Montana.

4.      Plaintiff Paradise Valley is, and at all times mentioned herein was, a Montana limited liability company. Grabow formed the company and is a manager, member and owner.

5.      Defendant Netflix Inc. ("Netflix") is, and at all times herein mentioned was, a Delaware corporation with its principal place of business in Los Angeles

County, California. Netflix is qualified to and is doing business in California. Netflix is involved in the production, development and/or distribution of *Rez Ball*.

6.     Defendant SpringHill Entertainment LLC ("SpringHill") is, and at all times herein mentioned was, a Delaware limited liability company with its principal place of business in Los Angeles County, California. SpringHill is qualified to and is doing business California. SpringHill on information and belief is involved in the production, development and/or distribution of the *Rez Ball*.

7.     Defendant Chernin Entertainment LLC ("Chernin") is, and at all times herein mentioned was, a Delaware limited liability company with its principal place of business in Los Angeles County, California. Chernin is qualified to and is doing business in California. Chernin on information and belief is involved in the production, development and/or distribution of the *Rez Ball*.

8.     Defendant Wise Entertainment Inc. ("Wise") is, and at all times herein mentioned was, a California corporation with its principal place of business in Los Angeles County, California. Wise is qualified to and is doing business in California. Wise on information and belief is involved in the production, development and/or distribution of *Rez Ball*.

9.     Defendant Lake Ellyn Entertainment, Inc. ("Lake Ellyn") is, and at all times herein mentioned was, a California corporation with its principal place of business in Los Angeles County, California. Lake Ellyn is qualified to and is doing business in California. Lake Ellyn on information and belief is involved in the production, development and/or distribution of *Rez Ball*.

10.     Defendant Lebron James ("James") is, and at all times herein mentioned was, an individual citizen of the United States residing in Los Angeles County, California. James on information and belief is involved in the production, development and/or distribution of *Rez Ball*.

11.     On information and belief, Defendant Sterlin Harjo ("Harjo") is, and at all times herein mentioned was, an individual citizen of the United States residing in

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

Oklahoma. Harjo on information and belief is involved in the production, development and/or distribution of *Rez Ball*.

12.     On information and belief, Defendant Sydney Freeland ("Freeland") is, and at all times herein mentioned was, an individual citizen of the United States residing in Los Angeles County, California. Freeland on information and belief is involved in the production, development and/or distribution of *Rez Ball*.

13.     On information and belief, Defendant Brit Hensel ("Hensel") is, and at all times herein mentioned was, an individual citizen of the United States residing in Oklahoma.

14.     Plaintiffs are ignorant of the true names and capacities of Defendants named herein as Does 1 through 20, inclusive. On information and belief, Does 1 through 20 are liable, in whole or in part, for the claims asserted in this Complaint. When Plaintiffs learn the true identities and capacities of Does 1 through 20, Plaintiffs will seek leave to amend this Complaint to allege the true names and capacities of Does 1 through 20.

15.     On information and belief, all relevant times, each Defendant was the principal, agent or employee of each other Defendant, and acted within the scope of that relationship.

**JURISDICTION AND VENUE**

16.     This Complaint alleges copyright infringement arising under the Copyright Act, 17 U.S.C. §§ 101, *et seq*. The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. This Court has subject matter jurisdiction pursuant to 17 U.S.C. § 501, and 28 U.S.C. §§ 1331, 1332(a), 1338(a) and 1367.

17.     Venue for this action properly lies in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants reside or can be found in this District and a substantial part of the events or omissions giving rise to the claims set forth herein arose in this District.

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

# FACTUAL BACKGROUND

## Grabow and the Original Work

18.    Grabow is an award-winning screenwriter and filmmaker based out of Montana. He released his first feature film in 2023 called *The Year of the Dog*, which opened in around 100 commercial theaters across the country. Grabow, wrote, directed and produced the film.

19.    Grabow is currently working on his second feature film, *The Gift of the Game*, which he wrote himself and is producing ("Original Work"). Grabow's script for the Original Work is registered with the US Copyright Office, registration number PAu 4-211-331.

20.    The Original Work is a powerful basketball film that deals with issues of community, race relations and poverty, and which centers around a Native American protagonist and his high school basketball team's quest to win the state championship.

21.    The Original Work is a poignant story about a mixed-race high school basketball team's push to make the state tournament, with much of the film's story coming from Grabow's own background including in acting and in basketball. It's a heartwarming journey of community, finding purpose, making connections, overcoming grief and ultimately healing. Grabow grew up with a single mom in many communities across the country. His Original Work pulls heavily from his environment and own life experiences.

## Defendants' Access to the Original Work

22.    Hensel is a cinematographer and director. She worked in the camera department for the Emmy-nominated FX television series *Reservation Dogs.* The series *Reservation Dogs* was co-written, executively produced and directed by Defendant Harjo. Taylor Hensel, Hensel's sister, is a director and producer. She also worked in the camera department for *Reservation Dogs.* Hensel and Harjo on information and belief were once in a romantic relationship with one another and are

**COMPLAINT**

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

also colleagues and collaborators who work closely together on professional endeavors.

23.     In early 2024, Grabow reached out to Hensel to introduce himself and the Original Work. In his introductory email, he asked Hensel whether she would be interested in learning more about the Original Work to see if she might like to join the project as a director or director of photography. Hensel responded to Grabow and expressed interest in being attached to the project. After exchanging a few emails and speaking with one another in a Zoom meeting about the Original Work, in early 2024, Grabow sent his copyrighted script of the Original Work to Hensel for her review and comments. Hensel executed a Non-Disclosure Agreement in connection with her review of the script for the Original Work. Hensel, by executing the NDA, agreed not to divulge any information regarding the Original Work to any third person and agreed not to copy any aspects of the Original Work. The script of the Original Work, which Mr. Grabow sent to Hensel for her notes, also conspicuously stated on each page that the work was copyrighted.

24.     After reading the script, Hensel told Grabow that she saw a great deal of potential in the story, but that additional work on the script would be necessary for her to attach herself to the project. She expressed her willingness to provide feedback on the script if Grabow was open to it.

25.     Grabow and Hensel continued to exchange emails in which Hensel provided comments about certain areas of the script that needed improvement. Grabow and Hensel also held Zoom meetings with one another to discuss the necessary revisions and areas of improvement. At one point in their discussions, Hensel introduced Grabow to her sister Taylor, stating that Taylor was interested in producing the film. Grabow, upon the suggestion of Hensel, also sent the script to Taylor for review and notes.

26.     Throughout the exchange between Hensel and Grabow, Hensel proceeded to fish for information regarding the Original Work, including asking

Grabow about the investors in the project, talent for the film and the status of production. Grabow also shared with Hensel during these conversations his sources of inspiration for the film.

27.    After approximately three months passed since their first introduction to one another, and after around three months of ongoing discussions about the Original Work, Hensel sent Grabow an email stating that upon further reflection the project was not aligning with her and her sister's professional interests and as such they both were declining to move forward with Grabow on the project.

28.    In addition to Hensel and Taylor, Grabow also sent the script to numerous other people in *Rez Ball* co-creators Harjo's and Freeland's personal and professional circles.

29.    In February 2024, Grabow sent the script of the Original Work to Andrew Maclean ("Maclean"). Maclean was first introduced to Grabow via a mutual friend in 2015. Maclean is an award-winning filmmaker and director and on information and belief is a friend of Harjo.

30.    On February 9, 2024, Grabow reached out to Maclean to share more about himself, his previous film, and the Original Work.

31.    On February 14, 2024, Maclean replied to set up a time for the two to have an initial phone call.

32.    On February 26, 2024, Maclean and Grabow had a telephone conversation during which they spoke about the Original Work. Grabow expressed his interest in having Maclean join the film as the director. Grabow and Maclean discussed covered rates, elements of the story and potential cast and crew.

33.    On April 3, 2024, Maclean and Grabow had a follow up call during which Maclean communicated interest in the film. At Maclean's request, Grabow sent Maclean a copy of the script for the Original Work. The script was conspicuously marked as copyrighted on each page. The script sent by Grabow to Maclean also included notes about the Original Work's emotional throughlines, a

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

logline, sequencing ideas for the state tournament games and links describing certain elements of Mr. Grabow's vision. The elements of the Original Work discussed in these notations are present in *Rez Ball*.

34.    After the April 3 conversation, Grabow sent Maclean a few follow up emails throughout April and May 2024. Grabow sent Maclean updated versions of the script and updates on potential cast and crew.

35.    In May 2024, Maclean responded to Grabow stating he decided the project was not right for him and he would be declining the offer to be attached to the film.

36.    Grabow also sent the script of the Original Work to various other persons and entities involved in the entertainment industry and with connections to and relationships with Harjo, including as follows:

- In or about February 2024, Grabow sent the copyrighted script, mood boards and other materials for the Original Work to Dennis Aig, a film producer.

- In or about February 2024, Grabow sent the copyrighted script, mood boards and other materials for the Original Work to Suzy Vanderbeek-Rea, a film producer.

- In or about March 2024, Grabow sent the copyrighted script, mood boards and other materials for the Original Work to the Montana Film Office. Grabow was awarded a $100,000 grant from the Montana Film Office for production of the Original Work as part of the Big Sky Film Grant Program.

- In or about April 2024, Grabow sent the copyrighted script of the Original Work to Jennie Saks, a talent agent and manager for well-known Native American actors.

- In or about April 2024, Grabow sent the copyrighted script of the Original Work to Michael Spears ("Spears"), a prominent Native



American actor. Spears was an actor in Harjo's television series *Reservation Dogs*. Spears was also an actor in Grabow's *The Year of the Dog*.

- In or about June 2024, Grabow sent the copyrighted script of the Original Work to Sky Hopinka, a well-known director and colleague and collaborator of Harjo.

**The Infringing Work and its Striking Similarities to the Original Work**

37.     On September 27, 2024, the film *Rez Ball* ("Infringing Work") was released for streaming on Netflix. The Infringing Work is a basketball film. As stated in the synopsis on Netflix, the Infringing Work is about the "Chuska Warriors, a Native American high school basketball team from New Mexico that must band together after losing their star player if they want to keep their quest for a state championship alive." The Infringing Work was co-written by Harjo and Freeland and co-created by Harjo, Freeland, James and Michael Powell ("Powell"). Freeland also directed the film. The Infringing Work was produced by, among others, James' production company SpringHill. The Infringing Work is said to be inspired by the nonfiction sports novel *Canyon Dreams: A Basketball Season on the Navajo Nation* which was authored by Powell.

38.     The Infringing Work and Original Work are substantially similar in their protected elements. There are numerous substantially and strikingly similar concrete and expressive elements in the two works' plot, theme, dialogue, mood, setting, pace, characters and sequence of events. Notably, the Infringing Work is far more similar to the Original Work in its protected expressive elements than it is to the book it is supposedly inspired by.

39.     The discussion set forth herein of the similarities between the Infringing Work and Original Work is not intended to be an exhaustive recitation of all similarities but is illustrative of the substantial similarity, and in many respects virtual identity, between the two works.

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

40.     The Infringing Work and Original Work are both about a male Native American high school student who is the star player on his high school basketball team. Both works follow the protagonist's basketball team in their quest to win a state championship.

41.     Both the Infringing Work and Original Work highlight Native American culture, and deal with issues of community, poverty, race relations and the power of team and sport.

42.     The ending sequence in the State Tournament's championship game in the Infringing Work and Original work are virtually identical in content, structure, sequence, mood, placement in the story and timing in the film: in the game's closing seconds, the protagonist's team is down by one basket; the protagonist player gets the ball at the end with a chance to win the game; he shoots a last-second shot that misses; it appears as if the protagonist's team has lost; everyone is disappointed; but wait, there is a late whistle by the referee; the protagonist was fouled; he has a chance to shoot free throws to win the game; and does so with the final free throw.

43.     The opening scenes and sequences of the Infringing Work and Original work are substantially similar in mood, setting, styles and with respect to characters and their establishment: they feature one of the main characters as a young child – similar age in both works – playing basketball outside with friends as his father watches; surrounding them is a picturesque, indigenous community featuring beautiful landscapes; both works open with voiceovers and highlight the local community with shots featuring community children playing on an outdoor basketball court, main locations and establishments in the town, and the surrounding natural beauty.

44.     The character development of the protagonist coach in both the Infringing Work and Original Work is substantially similar: the coach is a former hometown basketball star who played basketball at a Division 1 level, who then went on to play professionally; these key elements are established at the beginning of the

film via voiceover and during scenes in which the coach is engaging in sport; in both works, the coach is a lonesome figure dealing with grief and loss, struggling with romantic relationship pain, who returns home to coach their old high school; there are notable scenes featuring the coach home alone.

45.     In both the Infringing Work and the Original Work, the relationship between the protagonist and his mother, his mother's backstory and dialogue about his mother's relationship to basketball are strikingly similar: the protagonist is the child of an indigenous single mother who refuses to attend any of his basketball games because she is afraid to see her son fail in the pursuit of his dreams, and the single mother has formed such a worldview on inevitable failure based on her own life experiences;

- in the Original Work, the mother says, "And you know how heartbreaking it [basketball] can be… I don't want [protagonist son] heartbroken [by basketball]";

- in the Infringing work, the protagonist' mom says, "I don't want to go to [protagonist son] games because I don't want to see [protagonist son] fail";

- in another example, in the Original Work, the comment is made, "And maybe we'll even get you [the mom] to a game," and the response is a "non-committal shrug";

- in the Infringing work, the comment is made, "think she'll [the mom] come to one of your games finally," and the response is a sarcastic "Yeah, right man."

This storyline about the mother who will not go to her son's games because she fears he will fail was of particular interest to and attention of Hensel during her conversations with Grabow about the Original Work. Hensel and Grabow discussed this concrete element of the story at length, multiple times in Zoom meetings.

46.     In both the Infringing Work and the Original Work, the protagonist has

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

a parent who was a star high school basketball player in the area where the film takes place; that parent set a state high school scoring record, received a Division I basketball scholarship but ultimately did not make it off the reservation to pursue college basketball – for strikingly similar reasons:

- in the Original Work, the parent never ultimately played Division I basketball because of, among other things, the "pressure," the pull to stay on the reservation, the cultural dissonance and that he had a "sad song in his heart";

- in the Infringing Work, the parent ultimately never played Division I basketball because of the "pressure," "the shock of leaving the reservation" and because "her heart wasn't in it."

In both works, the hero coach played on the same court and at the same time as the parent, i.e., they were contemporaries; the coach regards the parent's basketball skills with reverence and shares with the protagonist player key information about the parent's basketball talent in strikingly similar ways:

- in the Original Work, the coach tells the protagonist, his parent "set the state tournament scoring record the year we played him";

- in the Infringing Work, the hero coach shares with the hero player that the hero player's parent, "scored 62 points in a game . . . still a record I think."

- in the Original Work, the hero coach shares with the hero player that the hero player's parent, "was one of the first native kids from Montana to get a D1 offer";

- in the Infringing Work, the hero coach shares with the hero player that the hero player's parent, "had a full ride to ASU" a Division 1 basketball program.

47.    There are substantially similar ways in plot, sequence and dialogue that both the Infringing Work and Original address selfish team play: during a game a

protagonist exhibits selfishness on the basketball court by forcing a bad shot while being covered by two defenders and afterwards is called out for his selfishness by a teammate which leads to a physical altercation between the two players;

- in the Original Work, a teammate confronts this protagonist saying, "you had two defenders on you," after which both players approach as if ready to fight, and the incident is broken up by the protagonist's team's coach;

- in the Infringing Work, a teammate confronts this protagonist saying, "you were double teamed," after which both players approach as if ready to fight and the incident is broken up by the protagonist's team's coach.

48.    In both the Infringing Work and the Original Work, there is a pivotal strikingly similar scene where the coach has a heart-to-heart with a protagonist about the need to be a more selfless player: in both works, the coach recites a short quote from someone else to highlight the importance of team play, followed by a specific reference to team play; and the length of the quote, the substance of the quote, and the ideas expressed in this coach's speech are strikingly similar:

- in the Original Work, the coach quotes, "power without love is reckless and abusive" and then says, "That's how you're playing . . . this is your chance to serve the team";

- in the Infringing Work, the coach says, "you ever heard the saying a good player makes himself better, but a great player makes others better" following with, "this team needs you."

49.    In both the Infringing Work and the Original Work, there is a substantially similar scene during which: the protagonist walks by a trophy case in the high school; then stops when he notices his coach in a prominent photo; the photo is of the coach as a highschooler with the rest of the coach's winning high school basketball team; a teammate and friend is walking along with the protagonist and

stops to look at the photo with him; in both works, this scene takes place at around 15-17 minutes in.

50.    In both the Infringing Work and Original Work, there is a strikingly similar sequence in which: one of the players from the protagonist's basketball team sings the national anthem at the beginning of their game with a beautiful voice and in an impressive and evocative manner. This scene was discussed extensively between Grabow and Hensel. Grabow specifically shared his idea that some of the players would not be holding their hands over their hearts, explaining to Hensel that he arrived at this idea based on one of his friends who is Lakota Native American and disclosed to Grabow that he does not hold his hand over his heart during the national anthem. The Infringing Work, in this scene during which one of the players sings the national anthem, also displays some of the players on the protagonist's team without their hands over their hearts.

51.    In both the Infringing Work and the Original Work, a coach of the protagonist team leads the team through smudging and some members of the team are initially resistant. Grabow discussed this scene extensively with Hensel as well.

52.    In both the Infringing Work and Original Work, there is a big team-bonding moment in roughly the same place in the story, followed by a strikingly similar sequence of scenes that tracks the ascension of the protagonist's high school basketball team: it takes place at approximately 65 minutes in; is relayed through a montage of shots that intercuts between on-court action and the players playing well and the player's personal lives with newspaper clippings highlighting the team's winning streak interspersed throughout.

53.    The opening sequence of scenes in the state tournament in the Infringing Work and Original work are strikingly similar in content, structure, sequence, mood, placement in the story and timing in the film, *e.g.*: the first game of the state tournament tips off; once the first basket is made by the protagonist's team, pumped up music begins to play and a montage of the tournament starts; the progress of the

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

tournament up until the championship game is conveyed through a montage of the protagonist's team's game highlights with shots of the stadium audience reactions, all with inspirational music playing in the background; in both works, the hero team goes undefeated and plays extremely well; and in both works, the tournament brackets were also displayed throughout the montage as a way of reflecting the teams' advancement through the tournament. Shooting the state tournament in this manner in the Original Work was expressed – a deliberate, conscious creative decision notated by Grabow in the script he sent to Hensel. Hensel and Grabow further discussed this intended, precise method of shooting the state tournament in their Zoom meetings.

54.    In both the Infringing Work and the Original Work, there is a pivotal moment in the state tournament's championship game before the protagonist's winning free throw where the protagonist sustains an injury from a hard foul, creating uncertainty about whether the protagonist will be able to continue in the game. In both works, the protagonist insists on going back into the game:

- in the Original Work, the protagonist says, "I need to go back in";
- in the Infringing Work the protagonist says, "I gotta keep going. I'm not coming off."

55.    The relationship between the protagonist and love interest are strikingly similar: they have a mostly platonic relationship with no overt sexual overtones; she is a similarly aged female in both works who does not like basketball and makes her dislike or indifference toward the game known; and just before the state tournament, the protagonist sheepishly asks the love interest out on a date.

- in the Original Work, the protagonist says, "Do you . . . do you want to come . . . maybe we grab an ice cream soda" – an inside joke between them;
- in the Infringing Work, the protagonist says, "Would you, uh… like wanna get dinner with me or something?"

56.     Both the Infringing Work and the Original Work feature only two basketball announcers who take on substantially similar personas in both films, and the dynamic between the duo is also virtually identical. One announcer is more humorous and takes on the comedic role. The other is slightly more serious. The announcers are used in both the Original Work and Infringing Work as a means to weave in cultural references particular to the local and native community.

57.     The hero coach celebrates the state championship victory in substantially similar ways in content and mood in both the Infringing Work and Original Work – alone, self-reflecting, while looking out onto views of the community's beautiful natural landscape.

58.     In both the Infringing Work and Original Work, there is a scene featuring a procession of cars lined up behind the bus of the protagonist's basketball team as a celebratory display of community support for the team.

59.     In both the Infringing Work and Original Work, the antagonist team is undefeated going into the state tournament.

60.     In both the Infringing Work and Original Work, the star of the antagonist team is regarded as the best player in the state.

61.     In both the Infringing Work and the Original Work, the protagonist's basketball team loses during the playoffs before the state tournament.

62.     In the Original Work, there is a track athlete on the protagonist's team who raves about track. In the Infringing Work, the protagonist's team has a cross country athlete who is called upon to share with the team his experience as a cross country athlete.

63.     In the Original Work, the protagonist is known for spending all day playing basketball and shoots 1,000 shots per day. In the Infringing Work, the protagonist spends all day shooting baskets.

64.     In both the Infringing Work and the Original Work, a teammate tries to convince the protagonist player into going to a party but the protagonist declines the

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

invitation, displaying his discipline and dedication to the game and his team.

65. In both Works, the protagonist stands up to a key adult figure trying to coach him in life with substantially similar dialogue:

- in the Original Work, the protagonist says, "I needed you to support my sense of who I am. Not yours";
- in the Infringing Work, the protagonist says, "I'm not you."

66. Both the Infringing Work and the Original Work address a player's parent's absence during the state tournament in a strikingly similar manner: they both cut back and forth to a parent of the player from the hero team who is dealing with a personal situation outside their control; who therefore cannot be present but is cheering their child on from afar.

67. In both the Infringing Work and Original Work, the hero team's assistant coach is Native American, a dear friend of the head coach in whom the hero coach laments about failure:

- in the Original Work, the coach says, "This is a bust";
- in the Infringing Work, the coach says, "I failed them."

68. The introduction to the antagonist team in the Infringing Work and Original work is virtually identical: the rival, antagonist team is introduced via a local news segment in which a local news reporter interviews a key member of the antagonist team; the interview takes place at the antagonist team's gym and establishes that this team is undefeated; strikingly, the rival star player is shown in the news segment doing specifically what was scripted in Original Work, a "windmill dunk" and then also hitting a "long three pointer"; the protagonist coach watches this local news segment on television while seated alone. These nearly identical scenes and sequences take place around 15 minutes in.

69. There is a sequence around police detainment of the protagonist that is strikingly similar in content, structure, sequence, placement in the story, and timing in the film: the protagonist gets into a physical fight shortly before the state

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

tournament; because of that he's detained by police which leads the protagonist's team's coach to pick up this protagonist player from police custody; the coach then drives the protagonist player from police custody to the protagonist player's home; the hero team's coach stops the car in front of the hero player's home; and they have an emotional conversation that is a breakthrough in their relationship. These nearly identical scenes and sequences take place around 75 minutes in.

70.    In both the Infringing Work and the Original Work, the film ends with a key adult figure to the protagonist playing basketball alone followed by the protagonist coming to join the key adult figure to play as well.

## **FIRST CLAIM FOR RELIEF**

**(For Copyright Infringement, Against All Defendants except Hensel, and Does 1-10)**

71.    Plaintiffs hereby incorporate by reference each of the foregoing allegations, inclusive, as though fully set forth herein.

72.    Plaintiffs are owners of the copyright in the United States for the Original Work.

73.    On information and belief, Defendants copied the Original Work and the protectable expressions contained therein, including, but not limited to, the expression of plot, characters, sequence of events, dialogue, mood, theme and setting contained therein.

74.    There are numerous similarities between the Original Work, on the one hand, and the Infringing Work, on the other hand.

75.    On information and belief, Defendants knowingly and willfully copied the Original Work and the protectable expression contained therein, including, but not limited to, the expression of plot, characters, sequence of events, dialogue, mood, theme and setting contained therein.

76.    Plaintiffs are informed and believe, and on that basis allege, that Defendants knowingly and willfully copied the original artistic and creative choices

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

that comprise Plaintiffs' expression of the premise, concept, ideas and elements of the Original Work.

77.     Plaintiffs are informed and believe that Defendants had access to the material contained in the Original Work, because Hensel, who is a colleague, collaborator and on information and belief once romantic partner of Harjo, obtained the copyrighted script from Plaintiffs for review and had several discussions with Plaintiffs about the copyrighted script. Plaintiffs are also informed and believe that Defendants had access to the material contained in the Original Work, because Defendants are prominent members of the entertainment industry and Plaintiffs sent the script to numerous prominent Native American directors, producers and actors within the entertainment industry. The Infringing Work is substantially similar to the Original Work.

78.     The total concept and feel of the Infringing Work is substantially similar to the total concept and feel of Plaintiffs' Original Work.

79.     In all matters alleged in this Complaint, Defendants, and each of them, acted without authorization of any kind from Plaintiffs. Defendants' actions constituted and continue to constitute copyright infringement in violation of Plaintiffs' exclusive rights under the Copyright Act.

80.     Due to their knowledge, relationships, and joint and concerted conduct, each Defendant is jointly and severally liable for the copyright infringements of the other Defendants herein.

81.     As a direct and proximate result of Defendants' infringing use of the Plaintiffs' copyrighted material in violation of Plaintiffs' exclusive rights under 17 U.S.C. § 106, Plaintiffs have suffered, and will continue to suffer, severe injuries and damages, and are entitled to those damages permitted by federal copyright law, including, but not limited to, compensatory damages and the profits derived by Defendants as a result of their infringing acts, in an amount to be determined according to proof at trial, as well as their attorneys' fees and other costs.

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

82.     Plaintiffs have suffered, and will continue to suffer, irreparable injury as a direct and proximate result of Defendants' infringing conduct, some substantial portion of which cannot be compensated by money damages if such wrongful conduct is permitted to continue. Accordingly, Plaintiffs request that Defendants be enjoined from any further infringing acts.

## SECOND CLAIM FOR RELIEF

### (For Breach of Contract, Against Hensel and Does 11-20)

83.     Plaintiffs hereby incorporate by reference each of the foregoing allegations, inclusive, as though fully set forth herein.

84.     Plaintiffs and Hensel entered into a valid and legally enforceable Nondisclosure Agreement obligating Hensel not to disclose proprietary information regarding the copyrighted script of the Original Work.

85.     The Nondisclosure Agreement states:

> The Receiving Party [Defendant Hensel] agrees to (i) hold the Disclosing Party's Proprietary Information in confidence and to take reasonable precautions to protect such Proprietary Information (including, without limitation, all precautions the Receiving Party employs with respect to its confidential materials), (ii) not to divulge any such Proprietary Information or any information derived therefrom to any third person, and (iii) not to copy or reverse engineer any such Proprietary Information. Any employee, agent or adviser given access to any such Proprietary Information to whom the disclosure is reasonably necessary must have a legitimate "need to know" and shall be similarly bound.

86.     In exchange for the commitment not to disclose any Proprietary Information as defined in the Nondisclosure Agreement, Hensel received adequate

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

and sufficient consideration, including unfettered and continued access to the copyrighted Original Work.

87.    Plaintiffs fulfilled their obligations under the Nondisclosure Agreement.

88.    Hensel breached the Nondisclosure Agreement by disclosing the Proprietary Information regarding the Original Work to third parties, including on information and belief to Harjo.

89.    The foregoing breaches have directly and proximately caused and will continue to cause Plaintiffs damages, including, but not limited to, lost revenue associated with decreased value as to the Original Work  and other potential lost business opportunities.

## THIRD CLAIM FOR RELIEF

### (For Intentional Interference with Contractual Relations, Against all Defendants except Hensel, and Does 1-10)

90.    Plaintiffs hereby incorporate by reference each of the foregoing allegations, inclusive, as though fully set forth herein.

91.    Plaintiffs have contracts with various third parties including investors, distributors and/ or talent for their services or investment in connection with the Original Work.

92.    At all relevant times, the contracts between Plaintiffs and these third parties including investors, distributors and/or talent were valid and enforceable.

93.    Defendants had knowledge of the contracts between Plaintiffs and these third parties.

94.    Defendants intentionally disrupted the contractual relationships between Plaintiffs and these third parties by stealing the protected elements from the Original Work for use in the Infringing Work and releasing the Infringing Work on Netflix for streaming, thereby damaging the profitability, marketability and desirability of the Original Work.

95.    Defendants knew that interference with the contractual relationship

between Plaintiffs and such third parties was certain to occur as a result of their wrongful conduct because Defendants were secretly stealing protected elements from the Original Work and releasing the Infringing Work on Netflix knowing such conduct would impair the marketability, profitability and desirability of the Original Work.

96.     Defendants' interference was a substantial factor in causing Plaintiffs to suffer economic harm in an amount to be determined at trial.

97.     Defendants are liable for any loss or damages, subject to proof, suffered by Plaintiffs as a direct and proximate result of Defendants acts and omissions alleged herein.

98.     On information and belief, the aforementioned acts of Defendants were done with the intent to deprive Plaintiffs of the value of the Plaintiffs' Original Work, and were done maliciously, with the intent to cause injury to Plaintiffs, and with a willful and conscious disregard of Plaintiffs' rights.  Consequently, Plaintiff is entitled to an award of punitive damages against Defendants, in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF

### (For Intentional Interference with Prospective Economic Advantage, Against all Defendants except Hensel, and Does 1-10)

99.     Plaintiffs hereby incorporate by reference each of the foregoing allegations, inclusive, as though fully set forth herein.

100.   An economic relationship exists between Plaintiffs and third parties such as investors, talent, and/or distributors, including for the third parties' future investment or services in connection with the Original Work.

101.   The economic relationship between Plaintiffs and such third parties carried a probability of an economic benefit to Plaintiffs in the form of future revenue generated by the Original Work.

102.   Defendants had knowledge of the economic relationship between


EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

Plaintiffs and such third parties for future agreements and future transactions.

103.   Defendants intentionally disrupted the contractual relationships between Plaintiffs and such third parties by stealing the protected elements from the Original Work for use in the Infringing Work and releasing the Infringing Work on Netflix for streaming, thereby damaging the profitability, marketability and desirability of the Original Work.

104.   Defendants knew that interference with the relationship between Plaintiffs and such third parties for future agreements and future transactions was certain to occur because Defendants were secretly stealing the protected elements of the Original Work for use in the Infringing Work released on Netflix thereby damaging the profitability, marketability and desirability of the Original Work, and Defendants were aware that their conduct was unlawful.

105.   Defendants are liable for any loss or damages, subject to proof, suffered by Plaintiff as a direct and proximate result of Defendants' acts and omissions alleged herein.

106.   Defendants' conduct in interfering with Plaintiffs' prospective economic relationships was independently wrongful.

107.   On information and belief, the aforementioned acts of Defendants were done with the intent to deprive Plaintiffs of the value of the Original Work by means of deceit and fraud, and were done maliciously, with the intent to cause injury to Plaintiffs, and with a willful and conscious disregard of Plaintiffs' rights. Consequently, Plaintiffs are entitled to an award of punitive damages against Defendants, in an amount to be proved at trial.

## **PRAYER**

Wherefore, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants as follows:

1.      On the first claim for relief, that judgment be entered for Plaintiffs and against all Defendants except Hensel, jointly and severally, for those damages

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

permitted by federal copyright law, including, but not limited to, compensatory damages and the profits derived by Defendants as a result of their infringing acts, in an amount to be determined according to proof at trial, as well as Plaintiffs' attorneys' fees and other costs of suit;

2.      On the first claim for relief, that preliminary and permanent injunctive relief be awarded to Plaintiffs against all Defendants except Hensel prohibiting: (a) any unauthorized copying or other use or exploitation of the Original Work by Defendants, their agents, servants, employees, attorneys, or anyone acting in concert with any of them or under purported rights from any of them, in violation of Plaintiffs' copyright rights; and (b) without limitation of the foregoing, the production and/or distribution (in any form or medium whatsoever) of *Rez Ball*;

3.      On the first claim for relief, that there be awarded to Plaintiffs against all Defendants except Hensel, such other and further relief as the Court deems just, equitable and proper;

4.      On the second claim for relief, that judgment be entered for Plaintiffs and against Hensel for compensatory damages in an amount to be determined according to proof at trial; and

5.      On the second claim for relief, that there be awarded to Plaintiffs against Hensel, such other and further relief as the Court deems just, equitable and proper.

6.      On the third claim for relief, that judgment be entered for Plaintiffs and against Defendants except Hensel for compensatory damages in an amount to be determined according to proof at trial;

7.      On the third claim for relief, that there be awarded to Plaintiffs against Defendants except Hensel, punitive damages;

8.      On the third claim for relief, that there be awarded to Plaintiffs against Defendants except Hensel, such other and further relief as the Court deems just, equitable and proper;

9.      On the fourth claim for relief, that judgment be entered for Plaintiffs and

**COMPLAINT**

against Defendants except Hensel for compensatory damages in an amount to be determined according to proof at trial;

10.    On the fourth claim for relief, that there be awarded to Plaintiffs against Defendants except Hensel, punitive damages;

11.    On the fourth claim for relief, that there be awarded to Plaintiffs against Defendants except Hensel, such other and further relief as the Court deems just, equitable and proper.

Dated:  November 14, 2024         EARLY SULLIVAN WRIGHT
                                                      GIZER & McRAE LLP

By:_____
        Devin A. McRae
        Rebecca L. Claudat
        Attorneys for Plaintiffs
        ROB GRABOW and PARADISE VALLEY
        PICTURES LLC

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated:  November 14, 2024         EARLY SULLIVAN WRIGHT
                                                      GIZER & McRAE LLP

By:_____
        Devin A. McRae
        Rebecca L. Claudat
        Attorneys for Plaintiffs
        ROB GRABOW and PARADISE VALLEY
        PICTURES LLC

5793311.1



**COMPLAINT**