MOLLY M. LENS (S.B. #283867)
mlens@omm.com
CASSANDRA SETO (S.B. #246608)
cseto@omm.com
NICOLE BILLINGTON (S.B. #336584)
nbillington@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067-6035
Telephone: +1 310 553 6700
Facsimile: +1 310 246 6779

Attorneys for Defendants
NETFLIX, INC.
CHERNIN ENTERTAINMENT, LLC
WISE ENTERTAINMENT, INC.
LAKE ELLYN ENTERTAINMENT, INC.
SPRINGHILL ENTERTAINMENT LLC
LEBRON JAMES
STERLIN HARJO
SYDNEY FREELAND

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROB GRABOW, an individual; PARADISE VALLEY PICTURES LLC, a Montana limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>NETFLIX, INC., a Delaware corporation, LEBRON JAMES, an individual; SPRINGHILL ENTERTAINMENT LLC, a Delaware limited liability company; CHERNIN ENTERTAINMENT, LLC, a Delaware limited liability company; WISE ENTERTAINMENT, INC., a California corporation; LAKE ELLYN ENTERTAINMENT, INC., a California corporation; STERLIN HARJO, an individual; SYDNEY FREELAND, an individual; BRIT HENSEL, an individual; and DOES 1-20, inclusive,<br><br>Defendants. | Case No. 2:24-cv-09822-FLA-PDx<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NETFLIX DEFENDANTS' MOTION FOR LEAVE TO FILE EARLY SUMMARY JUDGMENT MOTION AND TO BIFURCATE DISCOVERY ON PRIOR INDEPENDENT CREATION DEFENSE** |

# TABLE OF CONTENTS

**Page(s)**

I.   INTRODUCTION ........................................................................................... 1

II.  BACKGROUND ............................................................................................ 2

    A.    Factual Background ............................................................................ 2

    B.    Procedural Background ........................................................................ 4

III. ARGUMENT ................................................................................................. 5

    A.    The Netflix Defendants' *Prior* Independent Creation Defense Is Ripe, Discrete, and Case-Dispositive .......................................................... 5

    B.    The Court Should Bifurcate Discovery on Prior Independent Creation ....... 7

    C.    The Court Should Allow an Early Summary Judgment Motion on Prior Independent Creation ........................................................................ 12

IV. CONCLUSION ............................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Avila v. Willits Environmental Remediation Trust,*
633 F.3d 828 (9th Cir. 2011) ..................................................................... 7

*Bassil v. Webster,*
2021 WL 1235258 (C.D. Cal. Jan. 15, 2021) ............................................ 11

*Briggs v. Blomkamp,*
70 F. Supp. 3d 1155 (N.D. Cal. 2014), *aff'd*, 714 F. App'x 712 (9th Cir. 2018) ................................................................................................... 14

*Changing World Films LLC v. Parker,*
2024 WL 4744006 (C.D. Cal. Mar. 12, 2024), *on summary judgment,* 2025 WL 466443 (C.D. Cal. Jan. 10, 2025) ............................... 11, 12

*Changing World Films, LLC v. Parker,*
No. 2:22-cv-09021 (C.D. Cal. July 22, 2024) ........................................... 13

*Christian v. Mattel, Inc.,*
286 F.3d 1118 (9th Cir. 2002) ..................................................... 1, 5, 6, 7

*Danjaq LLC v. Sony Corp.,*
263 F.3d 942 (9th Cir. 2001) ....................................................................... 8

*Disorderly Kids, LLC v. Dollar,*
2015 WL 11117074 (C.D. Cal. Nov. 10, 2015) .......................................... 6

*Ellingson Timber Co. v. Great Northern Ry. Co.,*
424 F.2d 497 (9th Cir. 1970) ....................................................................... 8

*Esplanade Prods., Inc. v. Walt Disney Co.,*
2017 WL 5635024 (C.D. Cal. July 11, 2017) ............................................. 3

*Fam. Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.,*
461 F. Supp. 2d 1188 (C.D. Cal. 2006), *aff'd*, 525 F.3d 822 (9th Cir. 2008) ................................................................................................... 14

*Favia v. Lyons P'ship,*
1996 WL 194306 (S.D.N.Y. Apr. 23, 1996), *aff'd*, 112 F.3d 503 (2d Cir. 1997) ................................................................................................. 6

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991) ...........................................................................5

*Grubb v. KMS Patriots, L.P.*,
    88 F.3d 1 (1st Cir. 1996) ...........................................................5, 6, 7

*Hoffman v. Tonnemacher*,
    593 F.3d 908 (9th Cir. 2010) ...........................................................12

*Long Beach Unified Sch. Dist. v. Santa Catalina Island Co.*,
    2023 WL 11979756 (C.D. Cal. July 21, 2023) ................................12

*Loomis v. Cornish*,
    836 F.3d 991 (9th Cir. 2016) .............................................................3

*Miller v. Cal. Dep't of Corr. & Rehab.*,
    2019 WL 3753175 (N.D. Cal. Aug. 8, 2019)..............................13, 14

*Okanogan Highlands All. v. Crown Res. Corp.*,
    2022 WL 4596667 (E.D. Wash. Aug. 8, 2022)................................13

*Parrino v. FHP, Inc.*,
    146 F.3d 699 (9th Cir. 1998), *as amended* (July 28, 1998),
    *superseded by statute on other grounds* ........................................3

*Reed v. AutoNation, Inc.*,
    2017 WL 6940519 (C.D. Cal. Apr. 20, 2017)..................................13

*Rentmeester v. Nike, Inc.*,
    883 F.3d 1111 (9th Cir. 2018), *overruled on other grounds by
    Skidmore*, 952 F.3d at 1064 ..............................................................5

*Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*,
    952 F.3d 1051 (9th Cir. 2020).............................................................5

*Wixen Music Pub., Inc. v. Triller Inc.*,
    2021 WL 4816627 (C.D. Cal. Aug. 11, 2021)..............................8, 11

*Wixen Music Pub., Inc. v. Triller Inc.*,
    No. 2:20-cv-10515 (C.D. Cal. Dec. 17, 2021) .................................13

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Zahedi v. Miramax, LLC,*
    2021 WL 3260603 (C.D. Cal. Mar. 24, 2021) ...............................................8, 14

*Zahedi v. Miramax, LLC,*
    No. 2:20-cv-04512 (C.D. Cal. Sept. 29, 2020).....................................13

**Rules**

Fed. R. Civ. P. 1................................................................................12

Fed. R. Civ. P. 16................................................................................8

Fed. R. Civ. P. 26................................................................................8

Fed. R. Civ. P. 42................................................................................8

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

This is the rare case in which a discrete threshold defense can save the parties and the Court protracted fact discovery, expert discovery, motion practice, and, potentially, trial on issues that could be entirely moot.  Plaintiffs Rob Grabow and Paradise Valley Pictures LLC allege that *Rez Ball*, a motion picture released for streaming on Netflix in September 2024, contains protected elements from a script that Grabow wrote (but notably omits from the Complaint) called *The Gift of the Game*.  Plaintiffs assert copyright infringement and derivative claims against Defendants Netflix, Inc.; Chernin Entertainment, LLC; Wise Entertainment, Inc.; Lake Ellyn Entertainment, Inc.; SpringHill Entertainment LLC; LeBron James; Sterlin Harjo; and Sydney Freeland (collectively, the "Netflix Defendants").

Plaintiffs' claims against the Netflix Defendants hinge on the allegations that the Netflix Defendants had access to Grabow's script sometime after "early 2024" and copied protected elements from that script to create *Rez Ball*.  *See* Dkt. No. 1, Complaint ("Compl.") ¶¶ 1, 20, 40-70.  Plaintiffs' entire case fails—as a matter of fact, law, and logic—if the Netflix Defendants can prove that *Rez Ball* was independently created *before* it was even possible for them to access Grabow's script in early 2024.  After all, "[b]y simple logic, it is impossible to copy something that does not exist" at the time of creation.  *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1128 (9th Cir. 2002).  And, critically, the Netflix Defendants have unassailable proof of prior independent creation, including a production script dated April 28, 2023—almost one year before the earliest allegation of access— containing the very elements Plaintiffs claim were stolen from Grabow's script.

Given this, the interests of justice and efficiency would best be served by staging discovery and summary judgment motions to allow the Court to consider the threshold prior independent creation defense before other issues in the case.  To this end, this Motion seeks two independent, but related, forms of relief.  *First*, the

Netflix Defendants request that the Court exercise its broad discretion to limit the initial discovery phase to evidence related to prior independent creation—i.e., evidence that the Netflix Defendants created *Rez Ball* before the earliest allegations of access in 2024.  This discovery is discrete, has little-to-no overlap with other issues in the case, and would minimize the burden on the Court, parties, and many third-parties named in the Complaint.  *Second*—and regardless of whether the Court bifurcates discovery—the Netflix Defendants request permission to file an early summary judgment motion on prior independent creation while reserving the right to file a second motion on other issues (including lack of access, substantial similarity, and interference), should the first motion be denied.  Good cause for successive summary judgment motions exists where, as here, a threshold defense could be case-dispositive and avoid the time and expense of protracted litigation.

For the reasons set forth below, the Netflix Defendants respectfully request that the Court grant this Motion, bifurcate discovery, and/or grant the Netflix Defendants leave to file successive summary judgment motions if necessary.

## II.    BACKGROUND

### A. Factual Background

*Rez Ball*, released for streaming on Netflix on September 27, 2024, depicts the Chuska Warriors, a high school basketball team rooted in Native American culture, as they unite after the loss of their star player to keep their state championship dreams alive.  *See* Dkt. No. 37, Netflix Defendants' Answer ("Answer") ¶ 1.  *Rez Ball*, in turn, was inspired in part by *Canyon Dreams: A Basketball Season on the Navajo Nation*, a non-fiction book written by Michael Powell.  *Id.* ¶ 37.

The Complaint alleges that Plaintiff Rob Grabow wrote a script, *The Gift of the Game* ("*TGOTG*"), that shares a premise and protected elements with *Rez Ball*.  Compl. ¶¶ 1, 20, 40-70.  Plaintiffs tactically omitted Grabow's script from the Complaint, relying instead on unsupported characterizations of its contents.  *Id.*; *see*

*Esplanade Prods., Inc. v. Walt Disney Co.*, 2017 WL 5635024, at \*10 (C.D. Cal. July 11, 2017) (failure to attach allegedly infringed work to complaint amounts to "deliberate obfuscation" and indicates that inclusion of work "would have been detrimental to [plaintiff's] claims"); *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (describing policy interest in "[p]reventing plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based"), *as amended* (July 28, 1998), *superseded by statute on other grounds*. Plaintiffs then refused to amend the Complaint to attach Grabow's script, and thereafter even refused to honor their agreement to provide Grabow's script to the Netflix Defendants. *See* Declaration of Molly Lens ("Lens Decl."), Ex. B.

The Complaint alleges that Grabow provided a copy of this script to Defendant Brit Hensel[1] in "early 2024," and speculates that Hensel or one of eight other potential intermediaries *could* have provided the Netflix Defendants access to that script. Compl. ¶¶ 22-36.[2] According to Plaintiffs, one or more of the Netflix Defendants copied protected elements from Grabow's script in creating *Rez Ball*. Plaintiffs assert a claim for copyright infringement and derivative claims for interference with contract and prospective economic relationships against the Netflix Defendants. *Id.* ¶¶ 71-82, 90-107. Plaintiffs also assert a single claim against Hensel for breach of a non-disclosure agreement covering Grabow's script. *Id.* ¶¶ 83-89.

---

[1] Hensel is not alleged to have worked on *Rez Ball* and is separately represented.

[2] Plaintiffs do not allege that they had any direct contact with the Netflix Defendants. Nor do Plaintiffs allege that anyone in fact provided *TGOTG* to the Netflix Defendants. Instead, Plaintiffs ask the Court to infer access based on this chain-of-events theory. *See Loomis v. Cornish*, 836 F.3d 991, 995 (9th Cir. 2016) (rejecting plaintiff's theory of access through intermediaries as speculative). The evidence will refute these and other allegations.

The Netflix Defendants deny Plaintiffs' allegations—specifically, that they had access to *TGOTG* prior to the creation of *Rez Ball*; that they copied any element of *TGOTG*; that *TGOTG*—even as described in Plaintiffs' self-serving allegations—is substantially similar in protected elements to *Rez Ball*; or that they interfered with Plaintiffs' contracts or relationships.  But, regardless, Plaintiffs' claims of copying are both factually and legally impossible because *Rez Ball* was independently created long before Plaintiffs allege that access occurred in early 2024.  Indeed, even though discovery has yet to commence, the Netflix Defendants have *already* provided Plaintiffs with irrefutable evidence of prior independent creation:  a copy of the *Rez Ball* production script dated April 28, 2023—which contains every element that Plaintiffs allege the Netflix Defendants copied from *TGOTG*—as well as a transmission email and electronic metadata corroborating the script's date.  Lens Decl., Ex. B.  As set forth below, the Netflix Defendants' prior independent creation defense is case-dispositive.

**B. Procedural Background**

Plaintiffs filed the Complaint on November 14, 2024.  Dkt. No. 1.  The defendants have all answered.  *See* Dkt. Nos. 37 & 40.

Since Plaintiffs filed their Complaint, counsel for the Netflix Defendants and Plaintiffs have met and conferred about the claims and pathways to efficiently resolve the dispute.  Early in those discussions, the Netflix Defendants provided Plaintiffs the April 2023 *Rez Ball* production script and urged them to dismiss their claims in light of that dispositive evidence of prior independent creation.  Lens Decl., ¶¶ 3-4, Ex. A.  Upon Plaintiffs' request—and despite Plaintiffs withdrawing their agreement to provide Grabow's script for *TGOTG*—the Netflix Defendants then provided Plaintiffs additional evidence to corroborate the date of the April 2023 *Rez Ball* production script.  *Id.*, Ex. B.  Yet Plaintiffs refused to dismiss their claims.  The Netflix Defendants then asked Plaintiffs to agree to stage the case, so that the dispositive—and threshold—issue of prior independent creation would be

1 resolved first. *Id*., Ex. C. Plaintiffs again refused. *Id*. On January 24, 2025, the
2 parties conducted the Rule 7-3 conference on this anticipated motion but, again,
3 were unable to reach agreement. *Id*., ¶ 7.

4      On February 25, 2025, the Court issued an Order setting the initial
5 scheduling conference for April 4, 2025. Dkt. No. 43. The Netflix Defendants set
6 this Motion for hearing on the same day so that all scheduling issues may be
7 considered and resolved at the same time.

8    **III.**   **ARGUMENT**

9     **A. The Netflix Defendants' *Prior* Independent Creation Defense Is Ripe,**
10        **Discrete, and Case-Dispositive**

11     "[I]ndependent creation is a complete defense to copyright infringement."
12 *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064
13 (9th Cir. 2020) (citing *Feist Publications, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340,
14 345-46 (1991)). "No matter how similar the plaintiff's and the defendant's works
15 are, if the defendant created his independently," there can be no infringement as a
16 matter of law. *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018),
17 *overruled on other grounds by Skidmore*, 952 F.3d at 1064. This is especially true
18 with prior independent creation—that is, where the alleged infringing work was
19 created before exposure to the claimed infringed work. After all, "as a matter of
20 copyright law, it is well established that a prior-created work cannot infringe a
21 later-created one." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1128 (9th Cir. 2002).

22     Likewise, prior independent creation defeats any allegations of access or
23 copying. For example, in *Grubb v. KMS Patriots, L.P.*, 88 F.3d 1, 1-2 (1st Cir.
24 1996), the plaintiff alleged that the Patriots' NFL logo was copied from a design he
25 sent to the Patriots' headquarters on February 9, 1993. The Patriots submitted
26 timesheets confirming that their designer had all but completed the logo design by
27 February 4, 1993—five days before the alleged access occurred. *Id*. at 4. The court
28 granted summary judgment for the Patriots, noting that "prior creation renders any

conclusion of access or inference of copying illogical." *Id.* at 5; *see also Disorderly Kids, LLC v. Dollar*, 2015 WL 11117074, at *7 (C.D. Cal. Nov. 10, 2015) (dismissing copyright claim on summary judgment where "the uncontroverted evidence shows that [defendant's] design was created months before [plaintiff's] design"); *Favia v. Lyons P'ship*, 1996 WL 194306, at *4 (S.D.N.Y. Apr. 23, 1996) (Sotomayor, J.) (defendant's prior independent creation evidence was "fatal to [plaintiff's copyright] case, and would be so even if [plaintiff] had met her affirmative burdens"), *aff'd*, 112 F.3d 503 (2d Cir. 1997).

Here, the Netflix Defendants independently created *Rez Ball* by April 2023—long before Plaintiffs allege that the Netflix Defendants first had access to Grabow's script in "early 2024." Compl. ¶¶ 23, 77. Indeed, the Netflix Defendants have already provided Plaintiffs with a production script, which proves that the alleged infringing elements were already part of *Rez Ball* in early 2023. There is thus no need for the Court to wade into Plaintiffs' chain-of-events theory of access or allegations of copying when the evidence confirms that *Rez Ball* was created almost one year before the alleged access occurred.

During the parties' pre-filing meet-and-confer discussions on bifurcation of discovery, Plaintiffs argued that evidence of independent creation is inherently intertwined with evidence of access and copying. Lens Decl., Ex. C. While that *can* be true where a defendant asserts that it independently created the alleged infringing work *after* the allegations of access, it definitionally is not true where, as here, a defendant alleges *prior* independent creation. *See, e.g.*, *Christian*, 286 F.3d at 1128.

Critically, the Netflix Defendants' prior independent creation defense disposes of not only Plaintiffs' copyright infringement claim, but also their derivative claims for interference with contractual relations and prospective economic relationships. These derivative claims are predicated on the allegation that the Netflix Defendants "st[ole] protected elements from [*TGOTG*] for use in

1  [*Rez Ball*],” thereby damaging the “profitability, marketability and desirability” of

2  Plaintiffs’ work.  Compl. ¶¶ 94, 103.  But evidence that the Netflix Defendants

3  independently created *Rez Ball* prior to purportedly having access to the script

4  necessarily disproves Plaintiffs’ allegations of theft.  *See Grubb, L.P.*, 88 F.3d at 1-

5  2; *see also Christian*, 286 F.3d at 1128.  As a result, Plaintiffs’ interference claims

6  fail along with their copyright claim.

7      Moreover, the Netflix Defendants’ prior independent creation defense would

8  also dispose of Plaintiffs’ sole claim against Hensel, which alleges breach of a non-

9  disclosure agreement.  Plaintiffs allege that Hensel was the first in a chain of

10 intermediaries who *may* have provided Grabow’s script to the Netflix Defendants—

11 which, according to Plaintiffs, facilitated the alleged copying and caused the

12 commercial value of Grabow’s script to “decrease.”  Compl. ¶ 89.  Prior

13 independent creation evidence knocks down Plaintiffs’ faulty premise that *Rez Ball*

14 is a product of copying.  Without it, there is no basis to suggest Hensel shared

15 Grabow’s script in violation of the non-disclosure agreement.  Even assuming for

16 the sake of argument that she had, the fact that *Rez Ball* was independently created

17 beforehand shows that no harm to the commercial value of Grabow’s work flowed

18 from such a breach, so the claim fails for lack of resulting damages.  Nor could

19 Plaintiffs amend their way out of such a bind because the Court would likely lack

20 jurisdiction over Plaintiffs’ solitary remaining claim against Hensel.  *See* 28 U.S.C.

21 § 1367(c).

22     Accordingly, Netflix Defendants’ prior independent creation defense is

23 discrete and case-dispositive.  As discussed below, the case schedule should be

24 designed to facilitate prompt resolution of that threshold defense.

25 **B. The Court Should Bifurcate Discovery on Prior Independent**

26 **    Creation**

27     The Court has “broad discretion to manage discovery and to control the

28 course of litigation.”  *Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 833

(9th Cir. 2011).  Federal Rule of Civil Procedure 16 authorizes the Court to "control[]," "schedule[]," and "modify the extent of discovery" in the interests of "expediting disposition of the action [and] discouraging wasteful pretrial activities." Fed. R. Civ. P. 16(a)(1)-(3), (b)(3)(B)(ii), (c)(2)(F); *see also* Fed. R. Civ. P. 26(f)(3)(B) (a court may consider, at Rule 16(b) conference, "whether discovery should be conducted in phases or be limited to or focused on particular issues"). Federal Rule of Civil Procedure 42(b) similarly allows the Court to bifurcate discovery "[f]or convenience or to avoid prejudice, or to expedite and economize." *Wixen Music Pub., Inc. v. Triller Inc.*, 2021 WL 4816627 at *1 (C.D. Cal. Aug. 11, 2021) (quoting Fed. R. Civ. P. 42(b)); *see also Ellingson Timber Co. v. Great N. Ry. Co.*, 424 F.2d 497, 499 (9th Cir. 1970).

Courts have recognized that bifurcation of discovery is "particularly appropriate" where, as here, "resolution of a claim or issue might dispose of the entire case." *Zahedi v. Miramax, LLC*, 2021 WL 3260603, at *1 (C.D. Cal. Mar. 24, 2021); *see also Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 961 (9th Cir. 2001) (citation omitted) ("[A] favored purpose of bifurcation is … avoiding a difficult question by first dealing with an easier, dispositive issue.").  In determining whether to bifurcate discovery, courts also consider the "separability of the issues, simplification of discovery and conservation of resources, and prejudice to the parties." *Wixen*, 2021 WL 4816627 at *1 (citations omitted).

All these factors weigh decidedly in favor of bifurcation here.

As discussed above, the Netflix Defendants' prior independent creation defense could dispose of *all* of Plaintiffs' claims.  Moreover, prior independent creation is a discrete defense that has little-to-no overlap with other claims and issues in this case.  *See Wixen*, 2021 WL 4816627, at *3 (granting bifurcation where issues were separable and "would not result in overlapping discovery requests").  In evaluating that defense, the Court will consider whether *Rez Ball* was created before the earliest allegations of access in 2024.  The Netflix Defendants

have already provided Plaintiffs with key documentary evidence:  a *Rez Ball* production script dated April 28, 2023 that contains every element Plaintiffs claim was copied from *TGOTG*.  Likewise, any additional discovery on this discrete issue will focus on creation of *Rez Ball* prior to the allegations of access in "early 2024."[3]

In contrast, the balance of discovery would cover every other factual and legal issue in the case.  As noted above, these issues include access, substantial similarity, and interference.  Worse still, all indications suggest Plaintiffs are poised to seek irrelevant and burdensome discovery in support of their claims.  For example, Plaintiffs cast a wide net with their Complaint—first, by naming several defendants as alleged infringers without *any* factual basis beyond a naked producer credit for *Rez Ball*, and second, by identifying nine potential intermediaries (most of whom are third parties) to support their speculative theory of access despite being unable to allege a single fact connecting most of them to *any* Netflix Defendant.  Compl. ¶¶ 5-10, 22, 29, 36.[4]  Plaintiffs will presumably seek to depose each of these individuals and serve them with written discovery and/or document subpoenas that are likely to spark disputes that the Court must ultimately resolve.  Alternately, the Court can shield each of these third parties and extraneous defendants from the burden and expense of litigation relating to issues that could be mooted by an early summary judgment motion.  *Moreno v. NBCUniversal Media,*

---

[3] The Netflix Defendants submit, and Plaintiffs may yet agree, that prior independent creation can be decided on written and documentary evidence alone.  Case in point, the Netflix Defendants likely only require *TGOTG* script and written discovery on Grabow's first alleged distribution of such script.

[4] In addition to Netflix and writers Sterlin and Freeland, the Complaint names five defendants based solely on a conclusory allegation they produced or were otherwise involved in *Rez Ball*.  Compl. ¶¶ 6-10.  And the Complaint speculates that third parties Andrew Maclean, Dennis Aig, Suzy Vanderbeek-Rea, Jennie Saks, Michael Spears, Sky Hopinka, Taylor Hensel, and an unnamed representative from the Montana Film Office *could have* given Grabow's script to the Netflix Defendants— even though none of these purported intermediaries is even alleged to have worked on *Rez Ball*.  *Id*. ¶¶ 25, 29, 36, 77.

*LLC*, 2013 WL 12123988, at *2 (C.D. Cal. Sept. 30, 2013) (bifurcation warranted where "severing discovery would spare some Defendants from … discovery until necessary").

Plaintiffs have also already indicated that they believe that their copyright infringement claim requires expert discovery for purposes of the Ninth Circuit's extrinsic test for substantial similarity.  Lens. Decl., Ex. B.  To be clear, the Netflix Defendants disagree that any expert testimony is warranted.  Regardless, if the case is bifurcated and decided on prior independent creation, the parties can save the considerable expense of expert discovery and avoid burdening the Court with discovery disputes and litigation about whether and to what extent copyrightable elements in *Rez Ball* and *TGOTG* are substantially similar.

Bifurcation could avoid still more issues potentially related to Plaintiffs' interference claims and damages allegations, including discovery on:

- the existence and validity of Plaintiffs' claimed third-party contracts relating to *TGOTG*;
- the existence of the alleged prospective economic relationships between Plaintiffs and third parties relating to *TGOTG*;
- the Netflix Defendants' purported knowledge of Plaintiffs' contracts and prospective economic relationships (if any);
- the claimed disruption of Plaintiffs' contracts and/or prospective economic relationships (if any) as a result of the Netflix Defendants' conduct; and
- the type and extent of damages that Plaintiffs have purportedly suffered, whether such damages can be attributed to the Netflix Defendants' conduct, and Plaintiffs' mitigation efforts.

The most efficient approach is to stage discovery into Phase 1, which would be limited to the prior independent creation defense, and Phase 2, which would encompass all other claims and issues.  Following Phase 1 discovery, the Netflix Defendants would file an early summary adjudication motion on their prior

independent creation defense, which could moot the need for Phase 2 discovery altogether.  Courts have recognized that staging discovery this way promotes judicial efficiency and party convenience.  *See Changing World Films LLC v. Parker*, 2024 WL 4744006, at *2 (C.D. Cal. Mar. 12, 2024) (bifurcating copyright infringement case because "[i]f the case is resolved on a summary adjudication of the issue of access, it will save significant time and resources for both sides"), *on summary judgment*, 2025 WL 466443, at *4 (C.D. Cal. Jan. 10, 2025) (granting summary judgment for defendants on access, which "eliminates the need for Phase II proceedings"); *Bassil v. Webster*, 2021 WL 1235258, at *3 (C.D. Cal. Jan. 15, 2021) (recognizing that "[b]ifurcation would enable Defendants to move for summary judgment before the parties engage in onerous [] discovery that potentially generates disputes requiring judicial resolution").

Bifurcation of discovery would avoid, rather than cause, prejudice to the parties.  The Netflix Defendants would be severely prejudiced if they had to undergo full-fledged discovery, at substantial time and expense, before raising a threshold and fatal defect in Plaintiffs' claims.  *See Wixen*, 2021 WL 4816627, at *4 (possibility of fundamental defect in copyright infringement claim heightened "likelihood of prejudice towards [Defendant] by forcing it to proceed with costly discovery").  Likewise, the many third-parties identified in the Complaint would likely be subject to the burden of discovery into issues concerning access that could be entirely moot.  *Supra* note 4.

Conversely, bifurcation would cause minimal—*if any*—prejudice to Plaintiffs.  The risk of prejudice is "minimal" where, as here, the party requesting bifurcation "is not requesting any additional discovery, only that initial discovery that may foreclose later discovery proceed first."  *Wixen*, 2021 WL 4816627, at *4. Moreover, if the Court orders bifurcation and grants summary judgment on independent creation, then *all* parties would have saved "significant time and money."  *Moreno*, 2013 WL 12123988, at *2.  If, on the other hand, the Court

denies summary judgment, the parties can then proceed with discovery on other claims and issues—and plaintiffs would be no worse off than they are now. *See Changing World Films*, 2024 WL 4744006, at *2 (bifurcation warranted in absence of prejudice to either party).

### C. The Court Should Allow an Early Summary Judgment Motion on Prior Independent Creation

Regardless of whether the Court decides to bifurcate discovery, the Netflix Defendants respectfully request that the Court permit them to file two summary judgment motions *if necessary*:  one on their prior independent creation defense and another on the merits of Plaintiffs' claims.  As explained above, the Netflix Defendants intend to file an early summary judgment motion on independent creation grounds, which could dispose of all claims in this case.  In the event the Court does not grant that motion, however, summary judgment should be considered on the Netflix Defendants' other dispositive defenses—including because the uncontroverted evidence will show the Netflix Defendants had no access to Grabow's script, that Grabow's script is not substantially similar to *Rez Ball* in protected elements, and that there was no interference whatsoever with Plaintiffs' alleged contracts and economic relationships.  Because the Court's Standing Order prevents a party from filing more than one summary judgment motion "without leave of court," Dkt. No. 21 at 8-9, the Netflix Defendants respectfully request leave to file a second summary judgment motion on the merits of Plaintiffs' claims generally if necessary.

Courts have broad "discretion to entertain successive motions for summary judgment." *Hoffman v. Tonnemacher*, 593 F.3d 908, 911 (9th Cir. 2010).  Courts have found good cause to exercise that discretion where a second summary judgment motion could facilitate the "'just, speedy, and inexpensive' resolution" of a lawsuit without the need for trial. *Id.* (quoting Fed. R. Civ. P. 1); *see Long Beach Unified Sch. Dist. v. Santa Catalina Island Co.*, 2023 WL 11979756, at *2 (C.D.

Cal. July 21, 2023) (granting leave for "the Defendants to file a second MSJ" because doing so would "serve the goal of the Civil Standing Order and allow for a faster resolution of the case with fewer judicial resources spent"); *Miller v. Cal. Dep't of Corr. & Rehab.*, 2019 WL 3753175, at *1 (N.D. Cal. Aug. 8, 2019) (finding good cause for second summary judgment motion because "it is not sensible to expend [judicial resources] when it may not [be] necessary to do so"). Courts in the Central District—no stranger to copyright disputes—often structure their copyright infringement cases in particular to allow successive motions for summary judgment. *See, e.g.,* Order Approving Stipulation Re Phase I Schedule, *Changing World Films, LLC v. Parker*, No. 2:22-cv-09021 (C.D. Cal. July 22, 2024), ECF No. 64 (setting MSJ schedule on Phase I issue); Order to Extend Deadlines for Phase I Discovery and Summary Judgment and Certain Phase II Deadlines, *Wixen Music Pub., Inc. v. Triller Inc.*, No. 2:20-cv-10515 (C.D. Cal. Dec. 17, 2021), ECF No. 66 (setting additional MSJ schedule following Phase I discovery cutoff); Schedule of Pretrial & Trial Dates (Jury Trial), *Zahedi v. Miramax, LLC*, No. 2:20-cv-04512 (C.D. Cal. Sept. 29, 2020), ECF No. 65-1 (setting, in addition to standard dispositive motion deadline, a separate deadline for a preliminary MSJ on threshold issue).

First, courts have recognized that successive summary judgment motions promote efficiency and make logical sense where a threshold liability issue could moot other issues in the case. *See Reed v. AutoNation, Inc.*, 2017 WL 6940519, at *7-8 (C.D. Cal. Apr. 20, 2017) (granting motion to file successive MSJs because it would be "judicially economical to decide standing as a threshold issue"). That is the case here, where resolution of the threshold prior independent creation defense could moot the need to resolve the other merits issues in this case.

Second, courts have found good cause for successive summary judgment motions "where the subject matter of the different motions does not overlap, and the issues raised are not duplicative." *Okanogan Highlands All. v. Crown Res.*

*Corp.*, 2022 WL 4596667, at *2 (E.D. Wash. Aug. 8, 2022); *see also Zahedi*, 2021 WL 3260603 at *2 (bifurcating certain discrete issues for summary adjudication prior to the second phase of litigation).  As discussed above, there is minimal (if any) overlap between evidence and legal arguments related to prior independent creation and the other issues in the case, so a second summary judgment motion would not be duplicative.

Third, courts have exercised their broad discretion to allow successive summary judgment motions where doing so would avoid wasting "[s]ubstantial judicial resources and juror time," in addition to party resources on a trial of issues that could be resolved as a matter of law.  *See Miller*, 2019 WL 3753175 at *1. Courts frequently resolve questions of access, substantial similarity, and interference on summary judgment. *See, e.g.*, *Briggs v. Blomkamp*, 70 F. Supp. 3d 1155, 1166 (N.D. Cal. 2014) (granting summary judgment for defendants in copyright infringement case on access and substantial similarity grounds), *aff'd*, 714 F. App'x 712 (9th Cir. 2018); *Fam. Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 461 F. Supp. 2d 1188, 1195 (C.D. Cal. 2006) (granting summary judgment for defendant on interference claim), *aff'd*, 525 F.3d 822 (9th Cir. 2008). Allowing the Netflix Defendants to file a summary judgment motion addressing these issues could obviate the need for trial and promote judicial efficiency.

## IV.    CONCLUSION

For the foregoing reasons, the Netflix Defendants respectfully request that the Court: (1) order an initial discovery phase limited to evidence concerning the Netflix Defendants' prior independent creation defense, and/or (2) grant the Netflix Defendants leave to file an early summary judgment motion on their prior independent creation defense, while preserving their right to file a second summary judgment motion if necessary.

1    Dated:  March 7, 2025         O'MELVENY & MYERS LLP

2

3                                  By:    /s/ Molly M. Lens

4                                        Molly M. Lens
                                   Attorneys for Defendants
5                                  NETFLIX, INC.
                                   CHERNIN ENTERTAINMENT, LLC
6                                  WISE ENTERTAINMENT, INC.
                                   LAKE ELLYN ENTERTAINMENT, INC.
7                                  SPRINGHILL ENTERTAINMENT LLC
                                   LEBRON JAMES
8                                  STERLIN HARJO
                                   SYDNEY FREELAND

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## L.R. 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for the Netflix Defendants certifies that this brief contains 4,485 words, which complies with the word limit of L.R. 11-6.1.

Dated:  March 7, 2025          O'MELVENY & MYERS LLP


By:    /s/ Molly M. Lens
           Molly M. Lens
Attorneys for Defendants
NETFLIX, INC.
CHERNIN ENTERTAINMENT, LLC
WISE ENTERTAINMENT, INC.
LAKE ELLYN ENTERTAINMENT, INC.
SPRINGHILL ENTERTAINMENT LLC
LEBRON JAMES
STERLIN HARJO
SYDNEY FREELAND