Devin A. McRae, State Bar Number 223239
*dmcrae@earlysullivan.com*
Lisa L. Boswell, State Bar Number 190304
*lboswell@earlysullivan.com*
Rebecca L. Claudat, State Bar Number 315736
*rclaudat@earlysullivan.com*
EARLY SULLIVAN WRIGHT
GIZER & McRAE LLP
6420 Wilshire Boulevard, 17th Floor
Los Angeles, California 90048
Telephone: (323) 301-4660
Facsimile: (323) 301-4676

Attorneys for Plaintiffs
ROB GRABOW and PARADISE
VALLEY PICTURES LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

ROB GRABOW, an individual; PARADISE VALLEY PICTURES LLC, a Montana limited liability company,

Plaintiffs,

v.

NETFLIX, INC., a Delaware corporation, LEBRON JAMES, an individual; SPRINGHILL ENTERTAINMENT LLC, a Delaware limited liability company; CHERNIN ENTERTAINMENT, LLC, a Delaware limited liability company; WISE ENTERTAINMENT, INC. a California corporation; LAKE ELLYN ENTERTAINMENT, INC., a California corporation; STERLIN HARJO, an individual; SYDNEY FREELAND, an individual; BRIT HENSEL, an individual; and DOES 1-20, inclusive,

Defendants.

Case No. 2:24-cv-09822-FLA-PDx

**PLAINTIFFS ROB GRABOW AND PARADISE VALLEY PICTURES LLC'S OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO FILE EARLY SUMMARY JUDGMENT MOTION AND TO BIFURCATE DISCOVERY ON PRIOR INDEPENDENT CREATION DEFENSE; MEMORANDUM OF POINTS AND AUTHORITIES**

[*Declarations of Plaintiff Rob Grabow, David R. Ginsburg and Devin A. McRae filed and served concurrently herewith*]

Date: April 4, 2025
Time: 1:30 p.m.
Crtrm.: 6B

*Judge: Fernando L. Aenlle-Rocha*

Trial Date: None Set



EARLY SULLIVAN WRIGHT GIZER & MCRAE LLP ATTORNEYS AT LAW

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 3
II. FACTUAL BACKGROUND .......... 4
III. APPLICABLE COPYRIGHT INFRINGEMENT LAW .......... 6
IV. ARGUMENT .......... 7
A. THE COPYRIGHT INFRINGEMENT ANALYSIS AT ISSUE MUST BE BASED UPON THE ORIGINAL WORK AND THE *REZ BALL* FILM, NOT THE PRODUCTION SCRIPT .......... 7
B. THE CASE LAW CITED IN THE MOTION IS INAPPOSITE .......... 8
C. THE MOTION IS BASED ON THE PRESUMPTION THAT THE PRODUCTION SCRIPT IS AUTHENTIC AND IMPERVIOUS TO BEING CHALLENGED .......... 10
D. PLAINTIFFS ARE ENTITLED TO CONDUCT DISCOVERY ON ALL OF THEIR CLAIMS .......... 11
E. THE BIFURCATED DISCOVERY PROPOSED BY THE NETFLIX DEFENDANTS WOULD NOT BE EFFICIENT OR CONSERVE RESOURCES .......... 12
F. A MOTION FOR SUMMARY JUDGMENT IS ONLY PROPER AFTER PLAINTIFFS HAVE HAD A CHANCE TO FULLY CONDUCT DISCOVERY .......... 14
V. CONCLUSION .......... 15
LOCAL RULE 11-6.2 CERTIFICATION .......... 16



# TABLE OF AUTHORITIES

**Page**

## Cases

*China Cent. Television v. Create New Tech. (HK) Ltd.*, No. CV1501869MMMAJWX, 2015 WL 12732432 (C.D. Cal. Dec. 7, 2015) ...... 6

*Christian v. Mattel*, 286 F.3d 1118 (9th Cir. 2002) ...... 8, 10

*Esplanade Prods., Inc. v. Walt Disney Co.*, 2017 WL 5635024 (C.D. Cal. July 11, 2017) ...... 14

*Grubb v. KMS Patriots, L.P.*, 88 F.3d 1 (1st Cir. 1996) ...... 9

*Hardwell v. Parker*, No. CV219100DMGPVCX, 2022 WL 16894520 (C.D. Cal. Aug. 25, 2022) ...... 14

*Kids, LLC v. Dollar*, 2015 WL 11117074 (C.D. Cal. Nov. 10, 2015) ...... 14

*Moonbug Ent. Ltd. v. BabyBus (Fujian) Network Tech. Co.*, No. 21-CV-06536-EMC, 2024 WL 2193323 (N.D. Cal. May 15, 2024) ...... 6

*Moreno v. NBCUniversal Media, LLC*, 2013 WL 12123988 (C.D. Cal. Sept. 30, 2013 ...... 13

*Zahedi v. Miramax, LLC*, 2021 WL 3260603 (C.D. Cal. Mar. 24, 2021) ...... 13

## Federal Statutes

Fed. R. Civ. Proc. 11 ...... 8



## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Netflix Defendants'[1] motion (the "Motion") posits that they should be able to avoid discovery on access and copying as a matter of fact on the basis they have a so-called production script (the "Production Script") for the *Rez Ball* film (the "Infringing Work") that well predates access. The Motion collapses before it leaves the starting gate. The Production Script and the Infringing Work are not the same, and the Infringing Work continued to be "created" or "authored" until it was in its final form of the film that was released – well after defendants had access to (at least one of them, admitted possession of) Plaintiffs' script for *The Gift of the Game* (the "Original Work"). Even if the Production Script shows that many of the shared elements between the Original Work and the Infringing Work result from independent creation, that would not automatically insulate defendants from copyright infringement for directly lifting elements from Plaintiffs' Original Work and inserting them into their Infringing Work, as the case appears. Nor would directly lifting elements from the Original Work and inserting them in the Infringing Work automatically render defendants liable for infringement. Discovery is necessary to see how much protectable content defendants lifted from Plaintiffs' script and inserted into their Infringing Work. The Motion is a wolf (the attempt to avoid discovery on what and how much they copied from Plaintiffs' script) in sheep's clothing (the concern for judicial economy).

The Motion seeks bifurcation of discovery limited to a "prior" independent creation defense and leave to file an early summary judgment motion on the "prior" independent creation defense. Neither of these requests are viable because discovery

[1] "Netflix Defendants" includes moving parties Defendants Netflix, Inc., Chernin Entertainment, LLC, Wise Entertainment, Inc., Lake Ellyn Entertainment, Inc., Springhill Entertainment LLC, LeBron James, Sterlin Harjo, and Sydney Freeland.

regarding independent creation in this case would not be dispositive and would still require an analysis of access, disclosure and substantial similarity. It seems evident that the Netflix Defendants are aware of evidence of actual copying before their film's release, and by this talismanic Motion, seek to have their obligation to produce it in discovery simply disappear. The Motion is not well taken and should be denied.

## II. FACTUAL BACKGROUND

Plaintiff Rob Grabow ("Grabow") is an award-winning screenwriter, filmmaker, actor and producer from Montana. (*See* Compl. (ECF #1), ¶ 18; *see also* concurrently filed Declaration of Rob Grabow ("Grabow Decl.") ¶ 2.) His previous writing credits include the 2023 feature film *The Year of the Dog* and a short film entitled *Method*. (*Id.*) Grabow began writing the script for the Original Work in 2022. (*Id.* at ¶ 3.)

Defendant Brit Hensel ("Hensel") is a cinematographer and director who worked in the camera department for the Emmy-nominated FX television series *Reservation Dogs*. (*Id.* at ¶ 5.) The series *Reservation Dogs* was co-written, executively produced and directed by Defendant Sterlin Harjo ("Harjo"). (*Id.*) Hensel's sister, Taylor Hensel, is a director and producer who also worked in the camera department for *Reservation Dogs*. (*Id.*) Hensel has admitted that she was in a romantic relationship with Harjo. (*See* Hensel's Answer (ECF #40) ¶ 22.)

After initially reaching out to Hensel on or about May 14, 2024, to gauge her interest in joining the Original Work project and she in return expressed interest in being attached to this project, Grabow sent his copyrighted script of the Original Work to Hensel on May 27, 2024. (Grabow Decl. ¶ 6.) Hensel executed a Non-Disclosure Agreement ("NDA") in connection with her review of the script for the Original Work (*Id.*) After months of communications related to the Original Work including Zoom meetings and emails and sharing the script with Hensel's sister, Taylor, at Hensel's suggestion – Hensel advised Grabow on August 8, 2024 that she and her sister were no longer interested in being part of this project. (*Id.* at ¶¶ 6-10.)

Netflix released the film *Rez Ball* on September 27, 2024. Grabow was not aware that anyone he had contacted regarding *The Gift of the Game* as potential cast and crew had any direct ties to *Rez Ball*. (*Id.* at ¶ 11.) Shortly after *Rez Ball*'s release, Grabow watched the film and discovered many elements that were similar to his Original Work, including the state championship final game sequence, which was virtually identical to what he had written, and was not in a plethora of other basketball movies Grabow had watched. (*Id.* at ¶ 14.) Thereafter, Grabow listened to *Canyon Dreams: A Basketball Season on the Navajo Nation* by Michael Powell, the book that the defendants cite as inspiration for *Rez Ball* and found that *Rez Ball* had more in common with Grabow's Original Work in terms of protected elements than it did with *Canyon Dreams*. (*Id.* at ¶ 15.) Grabow also found very little overlap between *Canyon Dreams* and his Original Work. (*Id.*) Grabow made a detailed comparison between the *Rez Ball* film and his Original Work and noted over 200 overlapping elements – sequences, characters, themes, pacing, mood, setting, and even dialogue. (*Id.* at ¶¶ 16-23; *see also* Compl. ¶¶ 38-70.)

Grabow brought this action to protect his Original Work and the ability to make it into a film. (*Id.* at ¶ 24.) After Grabow filed the lawsuit, the Netflix Defendants provided a copy of the April 2023 Production script for *Rez Ball* (the "Production Script") to Plaintiffs' counsel, subject to a confidentiality agreement. (*Id.* at ¶ 25.) Grabow reviewed, analyzed and compared the Production Script for *Rez Ball* with the *Rez Ball* film, and the Original Work and identified numerous similarities between the *Rez Ball* film and the Original Work which were not present in the Production Script. (*Id.*) It would have been possible, if not easy, for Defendants to have implemented elements and concepts from the Original Work into the *Rez Ball* film in the post-production process, including, but not limited to, by way of automated dialogue replacement, voiceovers, narration, radio programming, live game announcements, and additional photography such as pickup shots and reshoots. (*Id.*)

## III. APPLICABLE COPYRIGHT INFRINGEMENT LAW

To prevail on a copyright infringement claim, plaintiff must show that (1) plaintiff owns the copyright in the infringed work, and (2) the defendant copied protected elements of the copyrighted work. *Moonbug Ent. Ltd. v. BabyBus (Fujian) Network Tech. Co.*, No. 21-CV-06536-EMC, 2024 WL 2193323, at *7 (N.D. Cal. May 15, 2024). The second prong contains two separate components: copying and unlawful appropriation, which are distinct concepts. *Id.*

"Because direct evidence of copying is not available in most cases, [a] plaintiff may establish copying by showing that defendant had access to plaintiff's work and that the two works are 'substantially similar' in idea and in expression of the idea." *China Cent. Television v. Create New Tech. (HK) Ltd.*, No. CV1501869MMMAJWX, 2015 WL 12732432, at *9 (C.D. Cal. Dec. 7, 2015) (internal quotations and citations omitted). "[T]he hallmark of unlawful appropriation is that the works share substantial similarities. The Ninth Circuit uses a two-part test—an extrinsic test and an intrinsic test—to determine whether two works are substantially similar." M*oonbug Ent. Ltd. v. BabyBus (Fujian) Network Tech. Co.*, 2024 WL 2193323, at *8 (internal quotations and citations omitted).

Under the extrinsic test, the trier of fact must use analytic dissection, and, if necessary, expert testimony to determine whether any of the allegedly similar features are protected by copyright. *Id.* The extrinsic test is an "'objective test based on specific expressive elements: the test focuses on articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in two works.'" *Id.* (citation omitted).

After plaintiff succeeds on the extrinsic analysis test, the analysis moves on to the intrinsic test, which is a subjective comparison that focuses on "'whether the ordinary, reasonable audience' would find the works substantially similar in the 'total concept and feel of the works.'" *Id.* at * 15 (citations omitted). Both tests must be satisfied for the works to be deemed substantially similar. *Id.*

## IV. ARGUMENT

### A. THE COPYRIGHT INFRINGEMENT ANALYSIS AT ISSUE MUST BE BASED UPON THE ORIGINAL WORK AND THE *REZ BALL* FILM, NOT THE PRODUCTION SCRIPT

The Netflix Defendants' Motion is based on the erroneous premise that this case hinges on the similarities between the April 2023 Production Script for *Rez Ball* and the Original Work. The Netflix Defendants argue that they independently created *Rez Ball* by April 2023, long before they first had access to the Original Work in 2024. As such, they say, the law of prior independent creation is a complete defense that would apply in this case and there is no need for discovery into issues of access or copying.

However, the Netflix Defendants fail to acknowledge the fact that the Production Script and the *Rez Ball* film—i.e., the Infringing Work—are ***not*** the same. The Infringing Work was not released until September 27, 2024, and Plaintiffs allege that defendants had access to the Original Work earlier in 2024. Therefore, the Infringing Work was ***not*** completed before Defendants' alleged exposure to the Original Work, and the Production Script does ***not*** prove that the alleged infringing elements were already part of the Infringing Work in early 2023. Contrary to the Netflix Defendants' assertion, the doctrine of prior creation would not defeat any allegations of access or copying in this case.

In addition to Plaintiffs' comparison of all of the works, Plaintiffs' expert consultant, David R. Ginsburg, completed an analysis and comparison of the Production Script with the Infringing Work and the Original Work. (*See* concurrently filed Declaration of David R. Ginsburg ("Ginsburg Decl.") ¶ 6.) Based on Mr. Ginsburg's review, he identified numerous instances of verbal content and scene disparities that were in the Infringing Work that were not in the Production Script. (*Id.*) Such differences could have been introduced and edited into the Infringing Work in the period of time between when Grabow shared the Original Work with Hensel

and the time the Infringing Work was released. (*Id.*) Therefore, it is possible for Defendants to have implemented elements and concepts from the Original Work into the Infringing Work in the post-production process, including but not limited to, by way of voiceovers, narration, radio programming, live game announcements, editing, and additional photography in a matter of weeks. (*Id.*) Accordingly, the changes, and the timing of those changes, between the Production Script and the Infringing Work would be highly relevant to a substantial similarity analysis. (*Id.* at ¶ 7.) Discovery regarding these changes is necessary, as well as information from the editor of the *Rez Ball* film, Jessica Baclesse, as to how and when these changes came to be and how and when they were ultimately implemented into the final film. (*Id.*)

Even if the Production Script was shown to be authentic and establishes that many of the similarities between the *Rez Ball* film and the Original Work were a product of independent creation, that would not be dispositive of substantial similarity or infringement by itself. (*Id.* at ¶ 8.) Any shared elements not shown to be of independent creation must still be analyzed, vetted through discovery and weighed in the substantial similarity analysis, including whether they resulted from copying as a matter of fact. (*Id.*) The Netflix Defendants' assertion that by submitting and analyzing a document ostensibly prepared in April 2023, all requirements of disclosure and proof legally sufficient to disprove substantial similarity have been satisfied, when in fact those very elements could have been added much later. (*Id.*)

**B. THE CASE LAW CITED IN THE MOTION IS INAPPOSITE**

The cases cited in the Motion are inapposite because the creation dates of the original work and the alleged infringing work were established by undisputed facts. In *Christian v. Mattel, Inc.*, the court held that the district court's order imposing Rule 11 sanctions against plaintiff's attorney for filing a frivolous action claiming that Mattel's Barbie dolls infringed the plaintiff's Claudene doll sculpture copyright was not an abuse of discretion (though ultimately order was vacated and matter was remanded for determination as to whether sanctions were based on attorney's

misconduct outside the pleadings as opposed to bringing a frivolous action). 286 F.3d 1118 (9th Cir. 2002). The district court determined that the entire Barbie doll, including the configuration of the makeup painted on the doll, existed years before the creation of the Claudene doll, and the Barbie dolls had clearly visible copyright notices on their heads that pre-dated the Claudene doll. *Id.* at 1123. Thus, the plaintiff's attorney had filed a meritless claim against Mattel as a reasonable investigation by the attorney would have revealed there was no factual foundation for plaintiff's copyright claim. *Id*. at 1124. In reaching its conclusion, the court stated that "it is impossible to copy something that does not exist. Thus, if Mattel created its doll sculptures before [plaintiff's company] created Claudene in 1994, it is factually and legally impossible for Mattel to be an infringer." *Id.* at 1128.

In stark contrast, here, the Original Work *did* exist before the Infringing Work was completed and released. It is therefore possible for the Infringing Work to have copied protected elements from the Original Work. Discovery is necessary to determine, among other things, who had access to the Original Work and when certain elements were added to the Infringing Work.

Similarly, *Grubb v. KMS Patriots, L.P.*, 88 F.3d 1 (1st Cir. 1996), is factually distinguishable. In *Grubb*, the district court granted summary judgment for defendants on plaintiff's claims of copyright infringement of his unsolicited NFL logo design submission for the Patriots. 88 F. 3d at 2. After considering the evidence, the district court found that (1) plaintiff failed to show that the alleged copier, Loh, had access to plaintiff's work, and (2) Loh composed his logo design independently of plaintiff's design. *Id.* Specifically, the undisputed evidence consisting of computer software timesheets (that could not be backdated) and Loh's deposition testimony established that Loh had finished designing his logo by February 4, 1993, and defendants did not receive plaintiff's sketch until February 9, 1993. *Id.* at 5. Because the court concluded that Loh composed his design prior to plaintiff's work, the appellate court did not go further to consider reasonable access or substantial similarity. *Id.* at 5-6.

Here, the parties have just begun the discovery process. (*See* concurrently filed Declaration of Devin A. McRae ("McRae Decl."), ¶ 2.) There is no undisputed evidence establishing that the Infringing Work, i.e., the *Rez Ball* film, was completed before the Original Work. The Production Script and the Infringing Work, i.e., the completed Rez Ball film, are different, and the completion of the Infringing Work occurred ***after*** access. Thus, as with the *Christian v. Mattel* case, *Grubb* is not persuasive to support the Netflix Defendants' argument that their independent creation defense is ripe, discrete or case-dispositive at this point in *this* case. Significantly, none of the Netflix Defendants' cases support the proposition that simply because an idea was the product of independent creation along with certain but not complete expression (i.e., the Production Script), that it automatically, as a matter of law, precludes liability for infringement after the fact of the initial creation.

**C. THE MOTION IS BASED ON THE PRESUMPTION THAT THE PRODUCTION SCRIPT IS AUTHENTIC AND IMPERVIOUS TO BEING CHALLENGED**

Additionally, the Motion is based on the presumption that the Production Script is authentic and is the exact version that was created in April 2023. The Netflix Defendants baldly assert that they "have already provided Plaintiffs with a production script, which *proves* that the alleged infringing elements were already part of Rez Ball in early 2023." (ECF No. 44-1 at p.6.) However, Plaintiffs do not need to accept at face value the Netflix Defendants' representations about the content and date of the Production Script, and an unauthenticated, unverified script proves nothing for the following reasons:

- The Netflix Defendants presenting the Production Script are the same defendants who are believed to have knowingly purloined copyrighted material.
- The single Production Script that the Netflix Defendants provided seems to have come from an in-house server operated and controlled by the Netflix

Defendants with both sender and receiver appearing to have in-house Netflix domains belonging to and under the control of the Netflix Defendants. (Grabow Decl. ¶ 29.)

- The Production Script was provided informally and does not include any attestation regarding authenticity. (*Id.*)
- There has been no opportunity to cross-examine or otherwise independently verify the content or date represented in the Production Script. (*Id.*)

In order to validate that the Production Script is in fact an authentic version of the script as it existed in April 2023, Plaintiffs would need to conduct discovery including, but not limited to, obtaining the subsequent versions of the script such as the versions shared with the film editor and documents relating to the post-production and editing process (automated dialogue replacement, voiceovers, narration, radio programming, live game announcements, and additional photography) to determine which film elements existed as of April 2023 and which ones were added thereafter.

Even if the Netflix Defendants' representations about the Production Script – which may or may not be true – are to be believed, the Production Script does not account for all overlapping, protected elements that exist between the Original Work and the Infringing Work. Therefore, the Netflix Defendants' *remarkable* assertion that "[t]here is no need for the Court to wade into Plaintiffs' chain-of-events theory of access or allegations of copying when the evidence confirms that Rez Ball was created almost one year before the alleged access occurred" should be disregarded.

**D. PLAINTIFFS ARE ENTITLED TO CONDUCT DISCOVERY ON ALL OF THEIR CLAIMS**

The Netflix Defendants claim that their prior independent creation defense would dispose of Plaintiffs' claims for interference with contractual relations and prospective economic relationships as well. They also argue the prior independent creation defense would dispose of Plaintiffs' sole claim against Hensel for breach of



EARLY SULLIVAN WRIGHT GIZER & MCRAE LLP ATTORNEYS AT LAW

the non-disclosure agreement because it "knocks down" Plaintiffs' claim that *Rez Ball* is a product of copying.

As addressed above, the Netflix Defendants' arguments are all based on the faulty premise that the existence of the Production Script would somehow insulate them from copying elements in Plaintiffs' script and inserting them into the finished film, the Infringing Work. Prior independent creation here is not as clear-cut as the Netflix Defendants portray it to be, and discovery is still necessary to determine if and when additional protected elements from the Original Work were added to the Infringing Work, if they did not exist in the Production Script. Further, now that Defendants have answered the Complaint, Plaintiffs are entitled to conduct discovery on all of their claims and determine if, when, and to whom Hensel disclosed information from the Original Work to support Plaintiffs' claims against Hensel, as well as the Netflix Defendants. The Netflix Defendants have no valid argument as to why Plaintiffs should be deprived of those rights.

### E. THE BIFURCATED DISCOVERY PROPOSED BY THE NETFLIX DEFENDANTS WOULD NOT BE EFFICIENT OR CONSERVE RESOURCES

Plaintiffs are amenable to phased discovery as long as the discovery includes the ability to conduct discovery relating to all Plaintiffs' liability claims and any asserted defenses. The Netflix Defendants' proposal to bifurcate discovery on the issue of prior independent creation would not dispose of all of Plaintiffs' claims. The Netflix Defendants argue that prior independent creation is a discrete defense that has little-to-no overlap with other claims and issues in this case. While that may be true in other cases, that is not true here. As addressed above, the Netflix Defendants are basing their argument on the erroneous premise that the infringing work is the April 2023 Production Script. Rather, the Infringing Work is the *Rez Ball* film that was released on September 27, 2024, which contains protected elements from the Original Work that defendants had access to before it was released. Consequently, Plaintiffs

would need to conduct discovery as to Defendants' access to the Original Work, all versions of the *Rez Ball* script, all documents provided to the film editor, and all documents relating to the post-production and editing process to determine which film elements existed as of April 2023 and which ones were added thereafter and subsequent to access.

Unlike the cases cited in the Motion, bifurcation as proposed by the Netflix Defendants would not streamline the case because discovery as to the issues of creation, access, interference and substantial similarity are not discrete and separable in this case. For example, in *Zahedi v. Miramax, LLC*, the court found that bifurcation was appropriate because it involved the straightforward issues of copyright ownership and statute of limitations. 2021 WL 3260603, at * 1 (C.D. Cal. Mar. 24, 2021). In so finding, the court noted that "[b]ifurcation 'is the exception rather than the rule of normal trial procedure' within the Ninth Circuit" and that bifurcation of the trial does not necessarily require bifurcation of discovery. *Id.* The court further stated that "this Court generally does not endorse bifurcated discovery proceedings…" *Id.* at *2.

While Plaintiffs do not generally oppose bifurcation of the case, any bifurcation would need to include the full scope of liability to be addressed in the first phase as all of the claims and issues overlap in determining whether there were protected elements that were taken from the Original Work and used in the final version of the *Rez Ball* film. Therefore, and as in the case, *Moreno v. NBCUniversal Media, LLC*, cited in the Motion, Plaintiffs are amenable to bifurcate discovery into phases for liability and damages. 2013 WL 12123988, at *2 (C.D. Cal. Sept. 30, 2013 (finding that legal and factual issues relating to liability and damages and the evidence relevant



to those issues were distinct and separable).[2, 3]

### F. A MOTION FOR SUMMARY JUDGMENT IS ONLY PROPER AFTER PLAINTIFFS HAVE HAD A CHANCE TO FULLY CONDUCT DISCOVERY

The Netflix Defendants request leave to file an early summary judgment on their prior independent creation defense. For the reasons discussed above, the issue of independent creation would require more discovery than suggested by the Netflix Defendants and would not fully dispose of the matter. If, after Plaintiffs have had an opportunity to fully conduct discovery, they determine that there is no reasonable basis to maintain any of their claims, then Plaintiffs have no issue with voluntarily dismissing those claims that are not supported by the evidence. Until then, the Netflix Defendants' attempt to wall off discovery concerning the time period after the *Rez Ball* Production Script was created in April 2023 is inappropriate. Plaintiffs are entitled to obtain discovery in the form of documents, e-discovery, and deposition testimony as to the changes made between the Production Script and the Infringing Work. The Netflix Defendants' attempt to prevent Plaintiffs from conducting

---

[2] The Netflix Defendants assert in the Motion that Plaintiffs' failure to attach the Original Work to the Complaint suggests that attaching it would have been detrimental to Plaintiffs' claims. However, unlike the case in *Esplanade Prods., Inc. v. Walt Disney Co.*, 2017 WL 5635024, at *10 (C.D. Cal. July 11, 2017) cited in the Motion, Plaintiffs have sufficiently described the basics of the Original Work in the Complaint. *See Hardwell v. Parker*, No. CV219100DMGPVCX, 2022 WL 16894520, at *4 (C.D. Cal. Aug. 25, 2022) (finding that plaintiff sufficiently described the basics of his screenplay and court took plaintiff's allegations as true in denying ***motion to dismiss***). This is not a motion to dismiss. All the defendants chose to answer instead of moving to dismiss and therefore the recitation of authorities related to motions to dismiss in this Motion is misplaced.

[3] The Motion also cites the case of *Kids, LLC v. Dollar*, 2015 WL 11117074 (C.D. Cal. Nov. 10, 2015), in which the court expressly stated: **This Order is not intended for publication. Nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis."** 2015 WL 11117074, at *10.



appropriate discovery at this stage suggests that the Netflix Defendants have something to hide, and their request to limit Plaintiffs' ability to seek the truth should be denied.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the Netflix Defendants' Motion in its entirety.

Respectfully submitted,

Dated: March 14, 2025

EARLY SULLIVAN WRIGHT GIZER & McRAE LLP

By: /s/ [signature]

Devin A. McRae
Lisa L. Boswell
Rebecca L. Claudat
Attorneys for Plaintiffs
ROB GRABOW and PARADISE VALLEY PICTURES LLC



**LOCAL RULE 11-6.2 CERTIFICATION**

Pursuant to Local Rule 11-6.2 and this Court's Civil Standing Order, the undersigned counsel of record for Plaintiffs certifies that this brief, excluding the caption page, table of contents, table of authorities, and the signature block, contains 4,031 words which complies with the word limit of Local Rule 11-6.1.

Respectfully submitted,

Dated: March 14, 2025

EARLY SULLIVAN WRIGHT GIZER & McRAE LLP

By: ______________________

Devin A. McRae
Lisa L. Boswell
Rebecca L. Claudat
Attorneys for Plaintiffs
ROB GRABOW and PARADISE VALLEY PICTURES LLC