Devin A. McRae, State Bar Number 223239
  dmcrae@earlysullivan.com
Lisa L. Boswell, State Bar Number 190304
  lboswell@earlysullivan.com
Rebecca L. Claudat, State Bar Number 315736
  rclaudat@earlysullivan.com
EARLY SULLIVAN WRIGHT
  GIZER & McRAE LLP
6420 Wilshire Boulevard, 17th Floor
Los Angeles, California 90048
Telephone: (323) 301-4660
Facsimile: (323) 301-4676

Attorneys for Plaintiffs
ROB GRABOW and PARADISE
VALLEY PICTURES LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| ROB GRABOW, an individual; PARADISE VALLEY PICTURES LLC, a Montana limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>NETFLIX, INC., a Delaware corporation, LEBRON JAMES, an individual; SPRINGHILL ENTERTAINMENT LLC, a Delaware limited liability company; CHERNIN ENTERTAINMENT, LLC, a Delaware limited liability company; WISE ENTERTAINMENT, INC. a California corporation; LAKE ELLYN ENTERTAINMENT, INC., a California corporation; STERLIN HARJO, an individual; SYDNEY FREELAND, an individual; BRIT HENSEL, an individual; and DOES 1-20, inclusive,<br><br>Defendants. | Case No. 2:24-cv-09822-FLA-PDx<br><br>**DECLARATION OF DAVID R. GINSBURG IN SUPPORT OF PLAINTIFFS ROB GRABOW AND PARADISE VALLEY PICTURES LLC'S OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO FILE EARLY SUMMARY JUDGMENT MOTION AND TO BIFURCATE DISCOVERY ON PRIOR INDEPENDENT CREATION DEFENSE**<br><br>[*Opposition; and Declarations of Plaintiff Rob Grabow and Devin A. McRae filed and served concurrently herewith*]<br><br>Date: April 4, 2025<br>Time: 1:30 p.m.<br>Crtrm.: 6B<br><br>Judge: Fernando L. Aenlle-Rocha<br><br>Trial Date: None Set |

5804578.1

**DECLARATION OF DAVID R. GINSBURG**

Docusign Envelope ID: 5DCF2E28-6466-4761-9CCE-D2755EF30668

# DECLARATION OF DAVID R. GINSBURG

I, David R. Ginsburg, declare and state as follows:

1. I make this declaration in support of Plaintiffs Rob Grabow and Paradise Valley Pictures LLC's ("Plaintiffs") Opposition to Defendants Netflix, Inc., Chernin Entertainment, LLC, Wise Entertainment, Inc., Lake Ellyn Entertainment, Inc., Springhill Entertainment LLC, LeBron James, Sterlin Harjo, and Sydney Freeland's (collectively, the "Netflix Defendants") Motion for Leave to File Early Summary Judgment Motion and to Bifurcate Discovery on Prior Independent Creation Defense (the "Motion") in the above captioned case. The following facts are of my own personal knowledge and if called as a witness I could and would competently testify as to the truthfulness thereof.

2. My qualifications to render an expert opinion in this case are set forth in my Curriculum Vitae, attached as **Exhibit 1** hereto. In summary, I served as the founding Executive Director of the UCLA School of Law's Entertainment and Media Law and Policy Program (now the Ziffren Institute for Media, Entertainment, Technology and Sports Law) and as a Lecturer in Law, where, from 2005 to 2015 I taught entertainment law and a seminar on entertainment law research and writing. I also taught a class dedicated to substantial similarity analysis between films to scripts and scripts to film. From 1986 to 2002 I was a full-time creative producer and senior managerial corporate executive with creative and supervisory functions in both the television and motion picture industries. From 1977 to 1986, I practiced transactional entertainment law exclusively, and I was a founding partner of the Entertainment Department at the law firm of Sidley & Austin (now known as Sidley Austin LLP), during which practice I also served concurrently as an appointed Judge Pro-Tem of the Beverly Hills Municipal Court. As part of my client work in private practice, I represented one of the major carriers of producer's error and omissions policies, in which capacity I was called upon repeatedly to assess and compare written and produced materials for possible claims of copyright infringement, defamation, and

invasions of privacy and the right of publicity, among other potential liabilities. In 1986, I became a full-time producer and senior managerial and production executive. As such, it was frequently part of my professional responsibilities to analyze screenplays and other written and oral submissions with respect to their general content and their separate elements, including (as applicable and appropriate, but without necessarily by way of limitation) theme, plot, story, character, dialogue, written and cinematic technique, potential similarity to prior or contemporaneous art, and whether any of the foregoing were protected, concrete expression (as opposed to mere abstract ideas or other species of unprotected content). That approach typically included a careful review and comparison of two or more works in various stages and versions (including any relevant prior art), and an examination of the foregoing elements therein, if and to the extent applicable. Finally, I have lectured on the history of reality television, and the development and state of the law of substantial similarity applied to it, at the Los Angeles Copyright Society, at the UCLA School of Law, and at the USC Gould School of Law.

3. I have been retained as an expert to conduct substantial similarity analyses in more than 20 copyright cases dating back to 2003.

4. I was retained by Early Sullivan Wright Gizer & McRae LLP to provide expert consultation in the above captioned case, specifically to conduct a preliminary substantial similarity analysis between **Plaintiffs' script for *The Gift of the Game*** and **the *Rez Ball* film** which was released for streaming on Netflix on or about September 27, 2024.

5. I have read the Motion and immediately noted that it is based on the erroneous premise that this case hinges on the similarities (or lack thereof) between **a production script for *Rez Bill*** and ***The Gift of the Game* script**. On the contrary, the substantial similarity analysis in this case is based upon **the final *Rez Ball* film** released by Netflix on September 27, 2024, and **Plaintiffs' script for *The Gift of the Game***.

6. I was provided with a copy of an April 2023 production script for *Rez Ball* (the "Production Script") which I understand counsel for the Netflix Defendants informally produced to Plaintiffs' counsel herein subject to Plaintiffs' and their counsel's and experts' agreement to maintain its confidentiality. As a result, I will not discuss the Production Script in any detail herein. However, I did thoroughly review, analyze and compare the Production Script for *Rez Ball* with the *Rez Ball* film, and *The Gift of the Game* script. Through this review and comparison, I identified numerous instances of verbal content and scene disparities that were in the *Rez Ball* film that were not in the Production Script. My prior experience led me to observe that the differences that are by definition not in the Production Script could have been introduced and edited into the *Rez Ball* film in the period of time between when Grabow shared his script for *The Gift of the Game* with Defendant Hensel and the time the *Rez Ball* film was released; put another way, it would have been possible for the defendants to have implemented elements and concepts from *The Gift of the Game* script into the *Rez Ball* film in the post-production process including but not limited to by way of voiceovers, narration, radio programming, live game announcements, editing, and additional photography in a matter of weeks.

7. The changes (and the timing of those changes) between the Production Script and the *Rez Ball* film would be highly relevant to my substantial similarity analysis. Therefore, I provided my input to Plaintiffs' counsel on the categories of documents and information to be included in an initial round of written discovery to all defendants geared to undercover this information and the timing of these changes. I also believe that the editor of the *Rez Ball* film, Jessica Baclesse, would likely have critical information on how and when these changes came to be and were ultimately implemented into the final film.

8. Even if the Production Script, if proven authentic, establishes that many of the similarities between the *Rez Ball* film and *The Gift of the Game* script were a product of independent creation, that would not be dispositive of substantial similarity

1  or infringement by itself; any shared elements not shown to be of independent
2  creation, must still be analyzed, vetted through discovery and weighed in the
3  substantial similarity analysis, including whether they resulted from copying *as a*
4  *matter of fact*. It is as if the defendants purport that by submitting a document
5  ostensibly prepared in April 2023, all requirements of disclosure and proof legally
6  sufficient to disprove substantial similarity have been satisfied, when in fact those
7  very elements could have been added much later.

8       I declare under penalty of perjury under the laws of the United States of
9  America that the foregoing is true and correct. Executed on this 12th day of March,
10 2025, at Santa Barbara, California.

Signed by:

David R. Ginsburg